## Leader Publishing Company et al. *v.* Grant Trust and Savings Company, Trustee.

[No. 21,858. Filed January 21, 1915.]

1. Mortgages.— *Foreclosure.— Complaint.— Sufficiency.—* A complaint for the foreclosure of a mortgage, alleging that the mortgage was executed and delivered on May 6, 1908, to secure bonds dated July 1, 1908, was not insufficient on the ground that it proceeded on the theory of the existence of one alleged indebtedness while the exhibits exemplify another and different one, though the mortgage and bonds filed therewith as exhibits showed that the mortgage was dated July 1, 1907, and executed May 6, 1908, to secure bonds issued on that date but also bearing the date of July 1, 1907, since the exhibits control and show that the allegation in the complaint as to date was a mere clerical error. p. 656.

2. Mortgages.—*Foreclosure.—Findings.—Ultimate Facts.—*In an action to foreclose a mortgage, a copy of the mortgage sued on is

not only an evidentiary fact, but an inferential or ultimate fact as well, and as such may be properly set out in a special finding of facts in the case. p. 658.

3. MORTGAGES.—*Foreclosure.—Findings.—Ultimate Facts.*—In an action to foreclose a mortgage securing bonds, where the mortgage and bonds are set out in the findings of the court, their identity with those declared on in the complaint is inherently shown and a specific finding of that fact is not essential. p. 658.

4. MORTGAGES. — *Foreclosure. — Findings. — Sufficiency. — Constructive Fraud.*—The provision of §7483 Burns 1914, §4924 R. S. 1881, that the question of fraudulent intent shall be deemed a question of fact, and the rule that fraud must be found as a fact and so stated in the special findings, do not apply in cases presenting a question of constructive or legal fraud, which is fraud arising irrespective of actual intent to defraud from acts or courses of conduct which, if sanctioned by law, would secure an unconscionable advantage; hence, in an action to foreclose a mortgage covering all the property then owned or thereafter to be acquired by mortgagor, a corporation, including good will of the business, easements and rights, a finding that the president of the mortgagor obtained leases in his name of the building occupied by mortgagor and especially adapted to its uses, under which he claimed the right of possession for himself, was sufficient to sustain a conclusion of law that the leases were fraudulent and void in law. pp. 659, 662.

5. CORPORATIONS.—*Acts of Officers.—Validity.*—The officers of a private corporation are its agents and are within the rule prohibiting one from deriving to himself a benefit through a fiduciary relationship which he bears to another; hence the act of such an officer in taking in his own name the title to property conveniently designed for the use of the corporation, and occupied by it, is potentially fraudulent as against the corporation, and at its instance he will be held to hold the title as trustee for its use. p. 661.

6. MORTGAGES.—*Foreclosure.—Appointment of Receiver.* — Under subd. 4, §1279 Burns 1914, §1222 R. S. 1881, the appointment of a receiver is authorized in an action to foreclose a mortgage to secure the application of rents and profits accruing before sale, when the property is not sufficient to discharge the mortgage debt, even though the mortgagor is not shown to be insolvent; and, where the mortgaged property is used for business purposes of such nature that a discontinuation of the business would destroy or greatly impair the value of the property, the court may authorize such receiver to carry on the business while he remains in charge. p. 662.

7. CHATTEL MORTGAGES.—*Foreclosure.—Sale.*—Sections 1151, 1157,

Burns 1914, §§1095, 1100 R. S. 1881, providing for sale on mortgage foreclosure by the sheriff, specifically apply to the foreclosure of mortgages on land, and, since there is no statutory direction concerning foreclosure sales of mortgaged chattels, a court in decreeing such foreclosure may designate who shall make the sale, and, in view of the provisions of §1285 Burns 1914, §1228 R. S. 1881, relating to the appointment of receivers in foreclosure proceedings, may order such sale to be made by a receiver. p. 663.

From Delaware Circuit Court; *Frank Ellis,* Judge.

Action by the Grant Trust and Savings Company, as trustee for bondholders, against the Leader Publishing Company and another. From a judgment for plaintiff, the defendants appeal. *Affirmed.*

*Eichhorn & Vaughn, J. Frank Mann* and *Woodson S. Marshall,* for appellants.

*W. H. Carroll, Condo & Browne* and *Thompson & Sprague,* for appellee.

Cox, J.—This suit was instituted by appellee as trustee for holders of bonds secured by mortgage on the property of appellant publishing company, of which company appellant Westlake was president and the owner of nearly all of its capital stock, to foreclose the mortgage, to procure the appointment of a receiver for the mortgaged property and to have certain leases, taken by appellant Westlake in his own name, declared a part of the property of the publishing company covered by the mortgage and sold as a part thereof. The complaint is very long, but in material substance is to the effect that the publishing company on May 6, 1908, executed and delivered to appellee as trustee its mortgage to secure the payment of 80 bonds of the company in the aggregate principal sum of $30,000 in three series all dated July 1, 1908, and to mature July 1, 1917; that by the terms of the mortgage and to secure the principal and interest on the issue of bonds the publishing company granted, sold, assigned and transferred to the trustee all and singular certain named equipment of the company

used in its publishing business "and all other material and fixtures and supplies which are now held or may be hereafter acquired for use in operating, repairing or replacing the property of the mortgagor, all leases, easements and rights * * * and the title and goodwill" of the newspapers published by the company "and all corporate property of whatever kind now owned or hereafter to be acquired by said mortgagor * * * with the reversion and reversions, remainder and remainders, rents, issues, income, product and profits thereof at law as well as in equity, which the said mortgagor, * * * now has or may hereafter acquire in and to the aforesaid property and leases and in every part and parcel thereof"; that appellee accepted the trusteeship provided for by the mortgage and on May 6, 1908, by its certificate authenticated the execution of the bonds provided for by the mortgage which were on that day issued and delivered by appellant company to appellee; that on the day following appellee pursuant to the order of appellant company issued, authenticated and delivered the bonds to persons to whom they had been sold by appellant company with all interest coupons attached except those maturing January 1, 1908; that the appellant publishing company defaulted on the interest due on bonds July 1, 1908, January 1, 1909, July 1, 1909, January 1, 1910, and July 1, 1910 and that the bondholders pursuant to the provisions of the mortgage elected to declare the principal sum due and payable as well as the interest and so notified the trustee as provided by the mortgage; that contrary to the provisions of the mortgage the appellant publishing company leased all of its property covered by the mortgage to appellant Westlake in consideration of a yearly rental which it was alleged was not paid and that he carried on the business and diverted the income thereof to his private use and depreciated the value of the property and the security of the bondholders; that appellant Westlake, after the execution of the mortgage and while the president of the publish-

ing company, took in his own name from the owner of the
building in which the mortgaged property was and con-
tinued to be located and operated and had been for many
years, a lease of such building with the fraudulent intent
and purpose of injuring appellee as trustee in its security
for the mortgage debt in the event of foreclosure, by ousting
the company and its property from the building, and there-
by impairing the security for the mortgage debt by prevent-
ing the operation of the concern by a receiver and sale as a
going concern; that both publishing company and West-
lake were insolvent. A judgment for $36,000 was demanded;
that the mortgage be foreclosed and the property sold to pay
the amount due; that the lease of the building taken by
Westlake in his own name be adjudged fraudulent and void
as against the publishing company and the trustee and that
the same be adjudged to inure to their benefit; that the lease
of the mortgage property to Westlake be declared void and
of no effect as against the trustee and that a receiver be
appointed to take possession of the property of the publish-
ing company and to conduct the same under the direction
of the court until the obligations under the mortgage should
be fully discharged. The mortgage and bonds with the trus-
tee's certificate identifying and authenticating the latter
were made exhibits to the complaint and the exhibits showed
the date of the bonds to be July 1, 1907, instead of July 1,
1908, as averred in the complaint. It also appears from the
complaint that the mortgage was dated July 1, 1907, but
acknowledged May 6, 1908. Appellants' demurrers to the
complaint were overruled. The only issues involved in this
appeal are such as were formed by an answer of general
denial filed by appellants.          .

At the request of the appellants the court found the facts
specially and stated as conclusions of law therefrom: "(1)
That the law is with the plaintiff; (2) that there is due and
unpaid on the bonds and coupons $37,580.10; (3) that the
leases taken by defendant Westlake in his own name upon

the building and real estate are fraudulent and void in law as against plaintiff and should be held to inure to the special benefit of the plaintiff; (4) that plaintiff is entitled to have its mortgage foreclosed and to have the mortgaged property, additions and accretions thereto and the leases on said premises sold to satisfy said debt; (5) that a receiver ought to be appointed to take charge of, manage, preserve and operate said mortgaged property and to maintain and operate the same in the publication of newspapers without change of policy, on said real estate and in said building until said mortgaged property, additions and accretions thereto and said lease can be sold." Judgment was rendered on the conclusions of law decreeing a foreclosure of the mortgage sued on as to the property therein described together with the leases taken and held by Westlake in his own name on the premises in which the mortgaged property was located to make the amount found due, ordering sale of the mortgaged property and such leases by a receiver and appointing a receiver to manage the property and conduct the business until sale, and to make the sale and distribute the proceeds.

Appellants asked, in two motions, for a modification of the judgment by striking out of it the order appointing a receiver, and also by striking out the order of sale by a receiver and instead to provide for a sale by the sheriff as upon execution and with relief from valuation and appraisement laws. These motions were overruled.

The errors assigned and not waived challenge only the sufficiency of the complaint, the correctness of the conclusions of law and the action of the court in overruling

1. the motions to modify the judgment. There is, first, a not very clear and definite contention in behalf of appellants that the complaint is insufficient in that the theory of it is that foreclosure was sought of a mortgage given to secure an indebtedness evidenced by bonds to be issued "thereunder" while the exhibits show bonds bearing a date anterior to the date of the execution of the mortgage and

which therefore must have been issued theretofore and not "under" the mortgage. We find no difficulty in discovering from the allegations of the complaint and the exhibits of the mortgage and bonds properly identified and made a part of it, that the purpose of the complaint was to secure foreclosure of a mortgage dated July 1, 1907, but executed May 6, 1908, to secure the payment of certain bonds executed and issued by appellant company on that date but also bearing the date of July 1, 1907, all of which bonds had attached thereto coupons promising to pay interest semi-annually from the latter date except those coupons on all of such bonds which would have matured January 1, 1908. The allegations of the complaint leave no doubt that these bonds were issued under and by authority of the provisions of the mortgage set out and the exhibits control and show that the allegation of the complaint, that the bonds which the mortgage was intended to secure were dated July 1, 1908, was a mere clerical error. Therefore the objections that the allegations of the complaint proceed on the theory of the existence of one alleged indebtedness while the exhibits exemplify another and different one not applicable to the mortgage sought to be foreclosed, is without merit.

In its special finding the court stated that on May 6, 1908, appellant company executed and delivered to appellee as trustee its certain mortgage upon the property therein described to secure the payment of certain bonds executed, issued, authenticated and delivered as hereinafter found, which mortgage reads and is in the words and figures following: (Here is set out in the finding a mortgage and forms of bonds and interest coupons identical in terms with those exhibited with the complaint.) That the mortgage was given to secure the payment of 80 bonds and interest coupons attached thereto which were substantially of the tenor and in the form set out and described in the mortgage set out in the finding and which bore the date of July 1, 1907; that

Vol. 182—42

appellee accepted the trusteeship under the mortgage on May 6, 1908, and on that date appellant company signed, issued and delivered to appellee its said bonds secured by said mortgage; that on the same day appellee certified to and authenticated each of the bonds in accord with the terms of the mortgage; that appellant company thereupon ordered appellee as trustee to deliver the bonds and coupons to certain named purchasers which was done May 7, 1908. This partial statement of the finding has relation to the first assault which is made on the conclusions of law favorable to appellee. The court did not in its finding expressly state that the mortgage and bonds therein set out were the identical mortgage and bonds sued on in appellee's complaint and counsel for appellants contend that the mortgage and bonds set out in the finding are but recitals of evidence or evidentiary facts and as such must be disregarded. And so disregarding them, it is claimed there is a lack of ultimate facts to support the conclusions of law, for the reason that a recovery could have been authorized only on the mortgage and bonds which were counted on by, and made a part of the complaint.

Counsel are, however, in error in the claim that the mortgage and bonds set out in the finding have no place therein and must be disregarded. It has been held that in 2. an action to foreclose a mortgage, a copy of the mortgage sued on is not alone an evidentiary fact but is as well an inferential or ultimate fact and as such properly may be set out in a special finding of facts made in the case. *Brunson* v. *Henry* (1898), 152 Ind. 310, 313, 52 N. E. 407; *Rowley* v. *Sanns* (1895), 141 Ind. 179, 187, 40 N. E. 674; *Louisville, etc., R. Co.* v. *Miller* (1895), 141 Ind. 533, 550, 37 N. E. 343; *King* v. *Downey* (1900), 24 Ind. App. 262, 56 N. E. 680; *Chicago, etc., R. Co.* v. *Yawger* (1900), 24 Ind. App. 460, 56 N. E. 50. It is not denied but conceded 3. by counsel for appellants, that an examination of the mortgage and bonds set out in the findings will show

their identity with those declared on by the complaint. This identity the court was bound to and did, it must be presumed, determine when they were admitted in evidence. If not those sued on they would not, of course, have been relevant to the issue presented and would not have been admissible in evidence. Being copied into the findings and inherently showing that they were the identical mortgage and bonds sued on, a finding of that fact in specific terms was not essential to the sufficiency of the finding.

It is to be noted that the mortgage involved covered all of the property of the appellant company then owned or thereafter to be acquired by the company, which property was then located in a certain designated building and included goodwill of the publishing business, easements and rights either in law or equity. Now the court found among other essential facts that at the time of the execution of the mortgage the property was located in the building designated and the business conducted therein and for more than five years theretofore had been and has since been so located and conducted; that appellant Westlake on December 14, 1908, and October 29, 1910, took in his own name from the owners thereof written leases for that building to March 1, 1915; that Westlake was at the time he took the leases the president and a director of appellant company; that the building was and had been for many years equipped for and was especially adapted to the business of the publishing company; that in November, 1908, in a prior suit of appellee to foreclose the mortgage a receiver of the publishing company's property and business was appointed; that this receiver took possession and pursuant to the order of the court proceeded to conduct the business in said building; that appellant Westlake, claiming for himself the right of possession of said building by virtue of said leases mentioned brought an action to eject the receiver and the business thereof. The court did not, in its finding, in terms characterize the leases as fraudulent as against the publishing com-

pany. It is the claim of counsel for appellants that the conclusion stated in the conclusions of law that the leases were "fraudulent and void in law" as against. appellee is not a conclusion of law but is an inferential or ultimate fact which should have been found from the facts above set forth and stated by the court in its findings, and that its absence from the finding of facts makes the latter insufficient to support the conclusions of law stated that these leases should be held to enure to the benefit of appellee, as trustee, as part of the mortgaged property.

This contention has for its basis the provision of §21 of the statute of frauds and perjuries of this State (§7483 Burns 1914, §4924 R. S. 1881), which provides that the question of fraudulent intent in all cases arising under the provisions of this act shall be deemed a question of fact, and the many decisions of this court not necessary to set forth herein that in cases involving that law fraud must be found and stated in the special findings as a substantive, ultimate fact. But these decisions do not control the question before us. It has been held that §21 does not apply where the rights involved do not depend on the statute of frauds. It is not applicable to such cases as exhibited by the facts above stated which present a case of constructive fraud. Constructive fraud or legal fraud arises by. acts or course of conduct which, if sanctioned by law would, either in the particular case, or in common experience, secure an unconscionable advantage, irrespective of the existence or evidence of actual intent to defraud. It is where the law infers fraud from the relationship of the parties and the circumstances which surround them independent of the intention. In actual fraud intent is an element of primary importance, whereas in constructive fraud it is of no significance. Fraud in law is what the law condemns from all the facts and circumstances surrounding a transaction and is synonymous with constructive fraud. It is, as has been said, "a contradiction of terms to say that constructive fraud must be found as a fact, when

in relation to certain well recognized transactions, it is fraud *ipso jure*". *Cotterell* v. *Koon* (1898), 151 Ind. 182, 51 N. E. 235. See, also, *Gorham* v. *Gorham* (1913), 54 Ind. App. 408, 103 N. E. 16; Smith, Fraud §1; Wald's Pollock, Contracts (3d ed.) 647; 1 Elliott, Contracts §§74, 75; 1 Page, Contracts §176.

General public policy prevents a person from deriving a benefit to himself or working a wrong to another through a fiduciary relationship existing between the parties.

5. Such a transaction is constructively fraudulent and hence may be impeached between persons sustaining the relationship. Such is the character of the relationship which exists between the officers of private corporations and the corporation. They are its agents and they are governed by the rules of law applicable to other agents, and as between themselves and their principal in so far as such rules relate to honesty and fair dealing in the management of the affairs of their principal. They must not in any degree allow their official conduct to be swayed by their private interest which must yield to official duty. *Wainwright* v. *P. H. & F. M. Roots Co.* (1912), 176 Ind. 682, 97 N. E. 8, and cases there cited; 10 Cyc. 787, 919. If, as in the case here, such an officer takes in his own name the title to property conveniently designed for the use of the business of the corporation and occupied by it the law will deem such an act, *prima facie*, at least, potentially fraudulent as against the corporation and the officer will at the instance of the corporation be held to hold the title as trustee for its use. 3 Cook, Corporations (7th ed.) §660; 39 Cyc. 182, 184 note 66; 2 Pomeroy, Eq. Jurisp. (3d ed.) §959; *Pikes Peak Co.* v. *Pfunter* (1909), 158 Mich. 412, 123 N. W. 19; *Acker, etc., Co.* v. *McGaw* (1907), 106 Md. 536, 68 Atl. 17; *Robinson* v. *Jewett* (1889), 116 N. Y. 40, 22 N. E. 224; *Scott* v. *Farmers, etc., Bank* (1903), 97 Tex. 31, 75 S. W. 7, 104 Am. St. 835; *Washburn* v. *Green* (1890), 133 U. S. 30, 10 Sup. Ct. 280, 33 L. Ed. 516; *Downard* v. *Hadley* (1888), 116 Ind. 131, 18 N. E. 457;

*Huffman* v. *Huffman* (1905), 35 Ind. App. 643, 73 N. E. 1096; *Sargent* v. *Kansas, etc., R. Co.* (1892), 48 Kan. 672, 29 Pac. 1063. As the mortgage was intended to cover

4. all of the property of appellant company then owned by it or which it might thereafter acquire, either in law or equity, there was, therefore, no error committed by the court, either against Westlake or appellant company, in concluding that the leases were fraudulent in law and that they should enure to the benefit of appellee as a part of the property mortgaged to it.

It is next asserted by counsel for appellants that the fifth conclusion of law that a receiver ought to be appointed to take charge of the mortgaged property and to conduct the business until sale was an erroneous one. The position of counsel seems to be that a receiver to preserve the property and to collect and hold the rents and profits for the discharge of the mortgage debt may not be appointed in cases such as this, even though as in this case the mortgage so provides, unless the insufficiency of the mortgaged property to discharge the mortgage debt and the insolvency of the mortgagor both be shown. And counsel contend that the trial court failed to find that appellant company was insolvent and that therefore, under the application of the rule stated the conclusion that a receiver for the property pending the sale of it was erroneous.

It is not, in this State, essential that there shall exist both insolvency of the mortgagor and insufficiency of the mortgaged property to pay the mortgage debt, to author-

6. ize a court to place the mortgaged property in the hands of a receiver in a suit to foreclose the mortgage. The statute, in actions by a mortgagee for the foreclosure of a mortgage and the sale of the mortgaged property, authorizes the appointment of a receiver to secure the application of the rents and profits accruing before a sale can be had when the property is not sufficient to discharge the mortgage debt. Subd. 4, §1279 Burns 1914, §1222 R. S.

1881; *Pouder* v. *Tate* (1884), 96 Ind. 330; *Hursh* v. *Hursh* (1885), 99 Ind. 500. The mortgage which was set out in the finding showed that the rents and profits were expressly mortgaged with the property itself and that a receiver *pendente lite* might be appointed in a foreclosure proceeding. The court not only found and stated that the value of the mortgaged property was $30,000 while the debt secured by the mortgage, principal and interest, amounted to $36,330 to which attorney's fees should be added, but it expressly found and stated the ultimate fact that the property was not of sufficient value to pay the mortgage debt. This was sufficient to warrant the legal conclusion of which complaint is made. In a case such as this where the mortgaged property is used for business purposes of such a nature that the discontinuation of the business would destroy or greatly impair the value of the property the court may authorize the receiver to carry on the business while he remains in charge. 27 Cyc. 1631 and cases there cited. The case of *Aetna Life Ins. Co.* v. *Broeker* (1906), 166 Ind. 576, 77 N. E. 1092, which counsel mainly rely on to sustain their contention that both insolvency and inadequacy of the mortgaged property are essential to authorize a receiver *pendente lite* manifestly does not hold that inadequacy of the mortgaged property alone is not sufficient, but so far as it touches the question at all it strongly intimates the contrary.

What has just been said serves to determine against appellants their contention that the court erred in overruling the motion to modify the judgment in so far as it decreed the appointment of a receiver for the mortgaged property. We do not construe this part of the judgment to institute a general receivership of the corporation but merely one for the mortgaged property pending the sale.

The overruling of the motion to modify the judgment by striking out that part of it which directed a sale by the receiver and to provide instead a sale by the sheriff as property is sold on execution and that the prop-

erty be sold with relief from valuation and appraisement laws, is the final assertion of error relied on by appellants. The claim of appellants that the sale should have been ordered made by the sheriff is manifestly based on the theory that §§1151, 1157 Burns 1914, §§1095, 1100 R. S. 1881, not only provide for such a sale but that a sale by that officer is exclusive of sale on foreclosure by any other officer or by any other method. These sections specifically apply to the foreclosure of mortgages on land. We have no statute containing such provisions concerning foreclosure sales of mortgaged chattels. In the absence of a statutory direction as to such a sale a court of general jurisdiction, possessing and exercising equity powers, may direct by whom the sale shall be made. The plaintiff having procured the judgment of foreclosure and sale is entitled to have the property sold to pay the mortgaged debt. A sale under the decree is in contemplation of law, the act of the court and, in the absence of a statute to the contrary, the instrument of the court in making the sale may be selected and designated by the court. Such sales usually are made by a master in chancery, a referee, a trustee, commissioner or sheriff. Whatever name may be given to the officer who makes the sale he acts as the agent of the court. 1 Wiltsie, Mort. Foreclosures (3d ed.) §533; 36 Cyc. 315; *Pilliod* v. *Angola R., etc., Co.* (1911), 46 Ind. App. 719, 91 N. E. 829.

The statute which authorizes the appointment of receivers under the circumstances before us, also provides, in another section, that they may "do such acts respecting the property as the court or judge thereof may authorize". §1285 Burns 1914, §1228 R. S. 1881. That a court in the exercise of its equity powers has the authority to order its receivers to sell property in its hands to be sold under its foreclosure decree, in the absence of a statute requiring a sale to be made otherwise, seems to be clear.

The judgment is affirmed.

State, ex rel. *v.* Burkit—182 Ind. 665.

Note.—Reported in 108 N. E. 121. As to foreclosure by exercising power of sale, see 92 Am. St. 573. See, also, under (1) 27 Cyc. 1590; (2, 3, 4) 27 Cyc. 1641.