MOTOR DISPATCH, INC. *v.* WILLIAM F. BUGGIE

[No. 3-875A161. Filed August 23, 1978.]

*William J. Moran*, of Hammond, for appellant.

*James K. Whitaker*, of Hammond, for appellee.

STATON, J. — Motor Dispatch, Inc. was engaged in the general trucking business. William F. Buggie was president of the business and he was one of four members of the Board of Directors. Buggie, having been unsuccessful in his attempt to buy out the other three shareholders, sold his common stock interest to Motor Dispatch, Inc. for $32,500. He was to receive $5000 within 30 days and an "Installment Note — No Security" (Note) for the $27,500 balance. Motor Dispatch, Inc. defaulted on the installment note. After the default, Buggie filed a counterclaim in a pending action which had been brought by Motor Dispatch, Inc. to collect alleged loans made to Buggie. At the conclusion of this action, the trial court rendered a judgment for Buggie on his counterclaim and rendered a judgment against Motor Dispatch, Inc. on its complaint which sought to collect loans made to Buggie. Motor Dispatch, Inc. appeals from these judgments and presents these five issues for our review:

(1) Did the trial court err in excluding evidence of unpaid loans and advances made by Motor Dispatch to Buggie while he was president?

(2) Did the trial court err in denying recovery to Motor Dispatch for those loans and advances?

(3) Did the trial court award excessive attorney fees to Buggie's attorney?

(4) Did the trial court err in denying interest to Motor Dispatch on the loans and advances?

(5) Did the trial court err in finding that Buggie did not breach his fiduciary duties while he was an officer of the corporation?

The judgment of the trial court is affirmed as to all the above issues.

I.

Loans and Advances

Since the first two allegations of error are related, we will address them together. Motor Dispatch raised, in its suit against Buggie, an issue

regarding certain alleged loans and advances made to Buggie while he was president. Before we review the issue of the admissibility of the evidence pertaining to the specific loans, we note that it was general practice in the corporation for loans and advances to be made to various officers. Therefore, the alleged loans to Buggie were part of common operating procedure.

Before trial, Buggie moved to discover the business records of the corporation. The company operated on a triplicate voucher check system. After the checks were prepared, some of the information from the checks and check stubs was entered on the check register. From the check register, entries were made into a general ledger; the same figures finally appeared on a worksheet of the accountant. Testimony was given at trial that the two duplicate check vouchers were first kept for a period of three years and later for six years and that they were available in the supply room of the company. Employees stated that the check vouchers would contain all of the information relative to a cash disbursement: on the check itself would appear the date, amount, and payee, and on the stub would appear "an explanation of what the check was issued for."[1]

Buggie twice requested production of the check registers and other records; the court ordered such production; no records were produced. Buggie then filed a motion for sanctions and secured an order setting the motion for hearing. At the oral argument on the motion, the trial court entered the following order:

> "Plaintiff FURTHER ORDERED to produce all items and matters set forth in Defendant's second request for production, inspection and copying on or before March 15, 1971 and to file with the Court an affidavit by said date, as to non-existence of any such items or matters or other reason for non-production. Failure by Plaintiff to comply with this order in any respect shall result in the Court

---

1. The vouchers gave much more information than could have been gleaned from the check register. The check register only contained a brief summary of the reason the check was issued, if it contained any reason at all. It was common practice for a check to be issued for a commission earned; and then, from the amount of commission would be deducted advances due the company, repair bills, fuel, salary for other employees, or other amounts. The difference between the original commission due and the total deducted would be the amount of the check. The voucher stubs were the most complete record of what each check was issued for.

dismissing "Plaintiff's amended complaint and entering default on Defendant's counterclaim in two paragraphs without further notice."

Motor Dispatch filed a statement on March 15, 1971, but that statement did not contain any reference to or explanation of the failure to produce either the check registers or the vouchers. Buggie filed a motion in limine on January 17, 1975; in that motion he sought to exclude from evidence all cancelled checks identified in Motor Dispatch's Pre-Trial exhibits numbered 1-8 and to exclude all oral evidence or secondary evidence of every kind and nature whatever. During trial Motor Dispatch finally produced the check registers for 1965, 1966, and 1967, and the Pre-Trial Order was amended. But when Motor Dispatch tried to introduce the check registers into evidence, Buggie objected, and the court sustained the objection. Motor Dispatch argues that the exclusion of the evidence was error.

The trial court was justified in excluding the check registers, if for no other reason, because Motor Dispatch failed to comply with discovery orders. Indiana Trial Rule 37(B)(3). But, we also agree with Buggie and the trial court that the check registers were inadmissible because they were not the first permanent record of the information made in the course of business; thus, their admission would have violated the best evidence rule.

Motor Dispatch complains that the check register was the first *permanent* record because the duplicate vouchers were customarily destroyed after six years. We do not believe "permanent" in the context of business record-keeping should be synonymous with "everlasting." It is more reasonable to examine whether the records are permanent in light of their functions. Most businesses would not keep elaborate books were it not for various state, local, and federal taxes. It is no coincidence, we are sure, that the statute of limitations for a tax audit is three years, the minimum amount of time the vouchers were kept.

Motor Dispatch's argument is not based in reality. At the time the action against Buggie was commenced, 1968, the vouchers for years 1964, 1965, 1966, 1967, and 1968, were available. The vouchers were the best evidence of the disbursements to Buggie. Since Motor Dispatch

presumably wanted to collect on the alleged loans and advances, it seems unreasonable that the best evidence of Buggie's obligation, duplicate originals, would be destroyed. In fact, there is no shred of evidence that the vouchers had been destroyed. The trial court did not err in excluding the check registers or other secondary evidence.

Additionally, Motor Dispatch was not harmed by the exclusion of the evidence, because several employees testified regarding the contents of the check registers. The trial court heard the testimony but did not allow recovery to Motor Dispatch for the alleged loans and advances. Motor Dispatch's appeal is from a negative judgment. Only when the evidence is without conflict and leads to one conclusion and the trial court reached a contrary conclusion will the decision be disturbed. *Columbia Realty Corporation v. Harrelson* (1973), 155 Ind.App. 604, 293 N.E.2d 804. Since Buggie and Motor Dispatch presented conflicting evidence as to the existence and amounts of the loans and advances, we cannot disturb the judgment of the trial court which denied Motor Dispatch recovery.

## II.

### Attorney Fees

A provision within the Note dealt with attorney fees:

> "In the event of default, the payee or legal holder hereof shall be entitled to reasonable costs of collection, including reasonable attorney's fees."

The trial court allowed $10,000 in attorney fees. Motor Dispatch argues that the amount is excessive because the evidence showed that the 300 plus hours of claimed legal time were not devoted to collection of the Note, but rather were expended defending Motor Dispatch's original suit.

Buggie details in his brief many of the spurious Motor Dispatch claims which were abandoned at trial. He also points out that until Motor Dispatch was sued in an ancillary but related lawsuit and Buggie's suit to collect on the Note became imminent, the myriad "set-off" claims had been unheard of. Buggie's attorney testified that "[A]ctually everything that was being done in this case involved the Note, because it constituted a tax upon the liquidated Note."

Buggie argues, and we agree, that the purpose of attorney fee clauses in security agreements such as the Note, is to make the holder whole in the event he must go to court to vindicate his collection rights. It would be useless to provide attorney fees for collection on a defaulted note if time spent defending fatuous set-off claims were not also recompensable. This is especially true when, as here, the claims, on the whole, yielded no recovery. We are aware that Motor Dispatch did beat Buggie to the courthouse, but this does not change the fact that the claims Motor Dispatch forwarded were found to be unsupported by convincing evidence.

The trial judge heard copious evidence of time spent by Buggie's attorney in prosecuting and making necessary defenses for Buggie's claim on the Note. Ten thousand dollars for 300 hours' work represents approximately $33.00 per hour. The court had overwhelming tangible evidence before it of the amount and difficulty of the work involved. We cannot say on appeal that the attorney fees awarded were excessive or constituted an abuse of discretion. The attorney fees at least indirectly arose from Motor Dispatch's failure to pay the Note when due, and it is just that Motor Dispatch should pay for the consequences of its own wrongful act. *See generally* Ogden, *Provision for Attorney's Fee in Negotiable Instruments*, 17 NOTRE DAME LAW. 81 (1942).

### III.

### Interest

Motor Dispatch received a judgment on one loan which had been made to Buggie in 1966. The trial court found that:

"William F. Buggie has admitted the existence of the $2,000.00 loaned to him by Motor Dispatch, Inc. to purchase a car in 1966; because he asserted the set-off for the $1875.00 capital contribution too late in these proceedings, this Court has ruled it will not permit such set-off in these proceedings reserving, however, unto William F. Buggie, the right to file independent suit for such $1875.00, as by law provided, if any; the Court, therefore, finds that William F. Buggie is indebted to Motor Dispatch in the sum of $2,000.00 for such 1966 loan, is not entitled to the $1875.00 set-off negotiated and agreed to in negotiations preceding and contemporaneous with the execution of the written "Agreement" dated February 28, 1967; there was no agreement on the part of William

F. Buggie, or any of the other officers of the Motor Dispatch, Inc. to pay interest for loans and advancements, and the Court finds that no interest is due; . . ."

None of the evidence presented to the court regarding various loans and advancements showed any interest due or paid. Motor Dispatch offered no affirmative evidence of an expressed or implied agreement that interest should be paid on these customary loans and advancements to its corporate officers.

It is our duty to sustain the action of the trial court if such can be done based upon any legal ground in the record. *Cain v. State* (1973), 261 Ind. 41, 300 N.E.2d 89; *American United Life Insurance Company v. Peffley* (1973), 158 Ind.App. 29, 301 N.E.2d 651. Failure of Motor Dispatch to go forward with convincing evidence is a sufficient basis upon which the trial court could deny recovery of interest.[2] We must presume that the trial court correctly decided the questions presented. *Kuykendall v. County Com'rs of Marion County* (1968), 142 Ind.App. 363, 234 N.E.2d 860.

IV.

## Breach of Fiduciary Duty

Motor Dispatch alleges that Buggie breached his fiduciary duty to the corporation when he paid "off a Teamster official to squelch a claimed grievance against the corporation." Motor Dispatch was a close corporation during the time period in question. As such, the shareholders stand in fiduciary relationship to each other. *Hartung v. Architects Hartung/Odle/Burke, Inc.* (1973), 157 Ind.App. 546,

---

2. Since the corporation, by allowing the officers no-interest loans, was itself foregoing interest it might have received if the money had been invested commercially, we interpret the practice to be a fringe benefit to the officers. Thus, the commercially reasonable interest which Motor Dispatch claims is due from Buggie on the $2000 loan was actually income to Buggie. Motor Dispatch would be justified in ascertaining what that interest was for the purpose of deducting it as part of salary and benefits paid Buggie for the years in which the loan was outstanding. Likewise, for each year that Buggie had not paid off the loan, the interest thereon should have been reported by him as income. It is not our obligation to determine what that interest would be. Motor Dispatch's contention that we should apply IC 1971, 24-4.6-1-102 (Burns Code Ed., Supp. (1976) (rate in absence of agreement) is clearly misplaced because that statute applies only to judgments and also because there was evidence that there *was* an agreement, *i.e.*, that no interest would be charged.

301 N.E.2d 240. A fiduciary must deal fairly, honestly, and openly with his corporation and fellow stockholders and must not be distracted from performance of his official duties by personal interests. *Leader Publishing Co. v. Grant Trust and Savings Co.* (1915), 182 Ind. 651, 108 N.E. 121.

The facts most favorable to Buggie show that he was president of the corporation in 1966 when the Teamster dispute arose. The dispute concerned the possible retroactive application of a newly negotiated steel hauling rate. Rather than battle the retroactivity, Motor Dispatch settled the dispute through a retired Teamster official. Motor Dispatch now tries to assert that because Buggie was president at the time and personally arranged for some of the settlement transactions, he breached his fiduciary duty to the company by subjecting the corporation to charges of unfair labor practices. Such an assertion has no merit in light of the uncontroverted evidence. The three shareholders still alive at the time of trial each acknowledged that they knew that the settlement was to occur and that they approved of it at the time. The evidence reveals that had the rate been made retroactive, the corporation could have been obligated for as much as $50,000; the dispute was settled for $10,000. In short, there was no evidence that Buggie hurt the corporation financially or that he failed to deal with his fellow stockholders fairly, honestly, and openly. The trial court did not err in denying recovery to Motor Dispatch on the breach of fiduciary duty claim.

### V.

### Conclusion

We have reviewed the errors presented and conclude that the judgment of the trial court in favor of Buggie is supported by sufficient evidence.

We affirm.

Buchanan, C.J., (by designation), Concurs;

Hoffman, J., Concurs.

NOTE—Reported at 379 N.E.2d 543.