


FILED
Sep 30 2025, 10:12 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

I N T H E

# Court of Appeals of Indiana

Timothy Clancy,

*Appellant-Plaintiff*

v.

Terry's Discount Windows and More, LLC,

*Appellee-Defendant*

September 30, 2025

Court of Appeals Case No.
24A-PL-3096

Appeal from the Porter Superior Court

The Honorable Michael J. Drenth, Special Judge

Trial Court Cause No.
64D02-2103-PL-2383

**Opinion by Judge Bradford**
Judge Mathias concurs.

Judge May dissents with opinion.

**Bradford, Judge.**

## Case Summary

After a dispute about the quality of work performed by Terry's Discount Windows & More, LLC ("Terry's"), Timothy Clancy sued Terry's for breach of contract, fraud, and negligence, and Terry's counter-sued for breach of contract and abuse of process. Terry's prevailed on all claims and then filed a motion for attorney's fees, prejudgment interest, and post-judgment interest. The trial court denied the motion, and Terry's appealed. In *Terry's Discount Windows & More, LLC v. Clancy*, 2024 WL 666901 *1 (Ind. Ct. App. Feb. 19 2024), ("*Terry's I*"), we concluded that Terry's was entitled to attorney's fees for its breach-of-contract claim, to prejudgment interest on its breach-of-contract claim, and to post-judgment interest on the entire judgment. After a hearing on remand, the trial court entered a judgment for attorney's fees and litigation expenses for Terry's in the amount of $163,736.31. Clancy contends that the trial court's order on attorney's fees constitutes an abuse of discretion. We affirm.

## Facts and Procedural History

The relevant facts, as set forth in *Terry's I*, are as follows:

In June 2020, Terry's entered into five home-improvement contracts with Clancy for various projects on Clancy's house. Each contract contained the following provision on default and collection:

> If Customer shall fail to make payment to Terry's as provided in this Purchase Contract, and shall fail to cure that non-payment within five (5) business days after issuance of written notice thereof by Terry's, Customer shall be in default under this Purchase Contract, and Terry's shall be entitled to initial [sic] legal proceedings for the collection of the balance then outstanding and unpaid under this Purchase Contract. In the event that Terry's is required to so initiate legal proceedings, **Terry's shall additionally be entitled to recover all costs and attorney fees incurred in connection with such collection proceedings**, as well as interest on the contract balance outstanding and unpaid at the rate of 1½% per month.

Appellant's App. Vol. II pp. 55, 57, 60, 63, 65 (emphasis added).

After Terry's completed some of the projects, Clancy raised issues with the quality of the work and refused to pay the balance due. The parties tried to resolve the dispute but failed. Clancy ultimately filed suit against Terry's in March 2021, alleging breach of contract, fraud, and negligence. Terry's counter-sued Clancy for breach of contract and abuse of process.

Just before trial, the parties entered a joint pretrial order. As part of the order, they agreed attorney's fees for Terry's would be one of the issues of law to be determined by the court. The order specifically stated: "Defendant/Counter-Plaintiff TDW has claimed it is entitled to attorney fees, expenses, and interest

**pursuant to the contractual language of the contracts**. If Defendant/Counter-Plaintiff obtains a favorable verdict which would be determined by the Court after judgement is rendered [sic]." *Id.* at 33 (emphasis added). The parties also jointly submitted an issue instruction setting forth $13,530 as the balance due for the work completed. *See id.* at 44; Appellant's Reply Br. p. 16 n.4 (explaining the instruction mistakenly listed the balance as $11,530 instead of $13,530).

A jury trial was held in April 2023. At the close of evidence, the trial court granted a directed verdict for Terry's on Clancy's negligence claim. The jury rejected Clancy's breach-of-contract and fraud claims and returned a verdict in favor of Terry's for $13,530 on its breach-of-contract claim and $35,000 on its abuse-of-process claim. The trial court entered judgment for Terry's for $48,530.

Terry's filed a post-trial motion for attorney's fees, prejudgment interest, and post-judgment interest. At the end of the hearing on the motion, the trial court said it was denying the motion based on the following:

> If [Terry's] had submitted to the jury at that point, the attorney's fees that ... [Terry's] had incurred, which is in fact exactly what they're asking for, then they could have determined what was reasonable on a counterclaim .... There was no evidence for the jury to determine what reasonable attorney's fees were .... [Terry's] could have said, my company spent this much money defending this frivolous lawsuit. That evidence wasn't in front of the jury .... [T]he motion for attorney's fees is [ ] denied.

Tr. pp. 11–12. In addressing the motion, the court didn't get into Terry's' specific arguments for prejudgment or post-judgment

interest, but it concluded the hearing by noting that "[t]he judgment that was entered accrues interest at the statutory rate at the date of its entry." *Id.* at 13. But the court didn't amend the judgment to reflect the accrual of post-judgment interest or enter a separate order awarding post-judgment interest. To the contrary, the court issued a written order ruling that "Defendant/Counter-Plaintiff's Motion for Award of Attorney Fees, Pre-Judgment Interest, and Post-Judgment Interest is DENIED." Appellant's App. Vol. II p. 24.

2024 WL 666901 *1–2 (emphases, all but forth set of brackets, and ellipses in original, footnote omitted).

[3]     In *Terry's I*, we concluded that the trial court had "erred in denying attorney's fees based on the lack of evidence for the jury to determine reasonable fees because this was not for the jury to determine." *Id.* at *3. Because the parties differed in their interpretations of a portion of the pretrial order, we explained the following:

> [i]n light of our case law that an award of attorney's fees pursuant to a contract must be reasonable, and that the trial court is in the best position to determine attorney's fees, we take the pretrial order to mean that the trial court was required to award Terry's attorney's fees incurred in the collection proceedings but had the discretion to determine a reasonable amount of fees. Terry's' breach-of-contract claim is a collection proceeding because it brought the claim to collect the outstanding balance of $13,530. On remand, the court must calculate reasonable attorney's fees for Terry's on its breach-of-contract claim as provided for in the parties' contracts.

*Id.* (internal citations omitted).

Terry's had argued that it was "entitled to attorney's fees for abuse of process because it is entitled under the terms of the contract to recover all attorney's fees incurred in connection with the collection proceedings." *Id.* at *4. Determining that the contract did *not* entitle Terry's to attorney's fees for its abuse-of-process claim, we explained:

> Terry's argues that like the negligence claim in [*Storch v. Provision Living*, LLC, 47 N.E.3d 1270, 1271 (Ind. Ct. App. 2015)], its abuse-of-process claim is related to the contracts and wouldn't have been brought but for the contracts. But unlike the agreement in *Storch*, the parties didn't agree Terry's was entitled to attorney's fees in "any" proceeding "relating to" the contracts. The contracts provided only for recovery of "attorney fees incurred in connection with" "legal proceedings for the collection of the balance then outstanding," and only the breach-of-contract claim involved such collection.

*Id.* Finally, we concluded that Terry's was entitled to prejudgment interest on the $13,500.00 award for its breach-of-contract claim, and post-judgment interest on the entire judgment and on attorney's fees and prejudgment interest, reversing and remanding with instructions. *Id.* at *5.

On May 29, 2024, Terry's filed its request for attorney's fees and expenses. On June 3, 2024, Clancy filed his response to Terry's request for attorney's fees and expenses. In August of 2024, Terry's filed a motion to compel or show cause against Clancy's expert witness on reasonable attorney's fees, and Clancy filed a response. The trial court struck Clancy's expert on October 3, 2024.

[6]     On October 30, 2024, the trial court held a hearing on Terry's request for attorney's fees and expenses. Terry's called Attorney Benjamen Murphy to testify as an expert on "reasonable attorney fees and rates for the amount of time expended for this case[.]" Tr. Vol. II p. 8. After being asked whether it would be possible to litigate the prosecution of a claim for breach of contract separately from a counterclaimed defense for breach of contract, Murphy responded "I would think that it would be pretty much the same." Tr. Vol. II p. 18. Murphy testified that each of Clancy's claims had included an incorporation by reference paragraph, which incorporated "all of the claims prior and subsequent to the breach of contract claim[.]" Tr. Vol. II p. 19. Murphy testified that, based on his review of the itemization of attorney's fees, the amount of time that counsel for Terry's had claimed to have spent on the case was reasonable, and that $400.00 per hour was a reasonable rate for the work, based on the outcome and the education and experience of counsel for Terry's.

[7]     Daniel Calhoun, who had represented Terry's at trial, testified at the hearing that he and Terry's had contracted for an hourly rate of $300.00 for the duration of the case. Calhoun testified that he uses the software Clio to log his time on the work that he completes. Calhoun also testified that he had worked "at most two hours" on the abuse-of-process claim "because everything else was relating to the breach of contract and Mr. Clancy -- which were also Mr. Clancy's claims, ancillary claims, that he incorporated that claim." Tr. Vol. II p. 52.

[8]     Calhoun's work log for this case was admitted as an exhibit. Calhoun testified that the exhibit "accurately reflect[ed] the time and hours that [he had] expensed as well as any of [his] associates expensed on this case[.]" Tr. Vol. II p. 45. The log demonstrated that 336.20 hours had been logged by counsel for Terry's for "Pre-Trial and Trial Time." Ex. Vol. p. 16. Calhoun testified that 336.20 hours spent on pretrial and trial litigation was reasonable, based on his experience. The log further demonstrated that counsel had logged 99.08 hours on post-trial non-appellate work and 88.59 hours on appellate work from between June 26 and October 23, 2023. An expense log reflected the total amount of pre-trial and trial expenses as of October 30, 2024, to have been $7475.63. Post-trial expenses totaled $3000.00, and appellate expenses totaled $392.28.

[9]     Clancy testified at the hearing that the reason that he had sued Terry's was "based off of his breach of contracts that [Clancy was] claiming." Tr. Vol. II p. 65. Clancy further testified that part of his contract claim was related to his claim that Terry's "shouldn't have had subcontractors[.]" Tr. Vol. II pp. 65–66. When asked whether a part of his contract claim had to do with his allegation that Terry's "didn't pull permit[,]" Clancy responded, "[i]t could have been." Tr. Vol. II p. 66. Clancy testified that part of his contract claim had involved his allegation that Terry's had not provided a warranty to him.

[10]    At some point during cross-examination, Terry's asked Clancy whether all of his claims against Terry's had been part of his contract claim. Clancy responded, "And most of all was the subcontractors that they used." Tr. Vol. II

p. 47. Terry's again asked, "But you would agree with me that was part of your breach of contract claim, right?" Tr. Vol. II p. 67. Clancy responded, "Part of it, yes." Tr. Vol. II p. 67.

On November 27, 2024, the trial court issued its "order on attorney fees" finding

> that the following attorney fees requested by the Defendant are reasonable and customary, and that the following hours expended were reasonable and commensurate to the time and work involved. In addition, that although the verdict of $13,530.00 on the Breach of Contract claim was minor in proportion to the fees accrued, minor cases that are litigated are also entitled to reasonable attorney fees even if apparently disproportionate to the recovery. Indiana Rule of Professional Conduct 1.5 indicates that the time and labor required, the questions involved, the skill to perform the legal service properly, along with the reputation of the attorney, and the attorney's ability in performing the service, are all factors that may be considered to ascertain if a fee is reasonable. Attorney Calhoun testified […] that he quoted [Terry's] a rate of $300.00 per hour. The Court will apply that rate and limit fees to the following: $300.00 per hour times 523.87 hours billed, for a total of $157,161.00. The Court also finds that attorney Calhoun testified that he spent only a "couple" of hours on the abuse of process claim. Therefore, the Court will deduct three hours at $300.00 per hour from the total. This leaves $156,261.00 in attorney fees. Court also finds that the Defendant incurred pretrial and trial expenses in the amount of $7,475.31.

Appellant's App. Vol. V p. 6. The trial court entered judgment in favor of Terry's for attorney's fees and litigation expenses in the sum of $163,736.31.

## Discussion and Decision

[12] Clancy contends that trial court's award of attorney's fees constitutes an abuse of discretion.

> "We review a trial court's award of attorney's fees for an abuse of discretion." *River Ridge Dev. Auth. v. Outfront Media, LLC*, 146 N.E.3d 906, 912 (Ind. 2020). "An abuse of discretion occurs when the court's decision either clearly contravenes the logic and effect of the facts and circumstances or misinterprets the law." *Id.* "To make this determination, we review any findings of fact for clear error and any legal conclusions de novo." *Id.*

*Zartman v. Zartman*, 168 N.E.3d 770, 782 (Ind. Ct. App. 2021), *trans. denied.*

[13] Generally, Indiana adheres to the "American Rule" with respect to the payment of attorney's fees, which requires each party to pay his or her own attorney's fees absent an agreement between the parties, statutory authority, or rule to the contrary. *Courter v. Fugitt*, 714 N.E.2d 1129, 1132 (Ind. Ct. App. 1999). Where, as here, the parties have included a contractual provision agreeing to pay attorney's fees, that agreement is enforceable according to its terms unless the contract conflicts with the law or public policy. *Reuille v. E.E. Brandenberger Const., Inc.*, 888 N.E.2d 770, 771 (Ind. 2008).

[14] Even when provided for under the terms of a contract, an award of attorney's fees must be reasonable. *Corvee, Inc. v. French*, 943 N.E.2d 844, 847 (Ind. Ct. App. 2011). "The party requesting an assessment of attorney fees bears the burden of proving an appropriate allocation of fees between issues for which attorney fees may be assessed and those for which they may not. While a

perfect breakdown is neither realistic nor expected, a reasonable, good faith effort is anticipated." *Kroger Co. v. WC Associates, LLC*, 967 N.E.2d 29, 40 (Ind. Ct. App. 2012) (internal citations, quotation omitted), *trans. denied.*

[15] Clancy contends that the trial court's order failed to conform to our decision in *Terry's I*. In *Terry's I*, we determined that Terry's was entitled to reasonable attorney's fees incurred "in connection with its breach-of-contract claim only[.]" 2024 WL 666901 at *3. Unlike the breach-of-contract claim, however, the abuse-of-process claim by Terry's (a tort claim, as we noted) did not involve collection of the outstanding balance, and therefore, did not entitle Terry's to reasonable attorney's fees. *Id*. at *4. Again, the parties had agreed that "Terry's was 'entitled to recover all costs and attorney fees incurred in connection with' legal proceedings to collect any outstanding balance." *Id*. at *3.

[16] Clancy specifically contends that any fees or costs incurred in connection with defending against Clancy's multiple claims[1] were unrelated to Terry's breach-of-contract claim. Terry's contends that the fees and costs ordered fully complied with *Terry's I*, arguing that Clancy's claims against Terry's "were part and parcel of his breach of contract claim by being inextricably intertwined with his breach of contract claim." Appellee's Br. p. 16. In support of this argument,

---

[1] In *Terry's I*, we explained that Clancy's claims against Terry's included breach of contract, fraud, and negligence, however, Clancy also alleged "breaches of the Home Improvement Fraud Act, Home Improvement Contract Act, and Indiana Consumer Protection Act, but the parties stipulated to dismissal of these counts before trial." 2024 WL 666901 at *1, n.1.

Terry's cites to *Motor Dispatch, Inc. v. Buggie*, 177 Ind. App. 347, 379 N.E.2d 543 (1978), which we find persuasive. There, pursuant to a note provision which read that, "[i]n the event of default, the payee or legal holder hereof shall be entitled to reasonable costs of collection, including reasonable attorney's fees[,]" a panel of this Court determined that the trial court's award of $10,000.00 in attorney's fees was not excessive. *Id.* at 351, 379 N.E.2d at 546. Like Clancy, Motor Dispatch argued that the amount was "excessive because the evidence showed that the 300 plus hours of claimed legal time were not devoted to collection of the Note, but rather were expended defending Motor Dispatch's original suit." *Id.* at 352, 379 N.E.2d at 546.

[17] Concluding that the trial court did not abuse its discretion in awarding the fees, we explained that "[i]t would be useless to provide attorney fees for collection on a defaulted note if time spent defending fatuous set-off claims were not also recompensable. This is especially true when, as here, the claims, on the whole, yielded no recovery." *Id.* at 352, 379 N.E.2d at 546. While Motor Dispatch "beat Buggie to the courthouse," we determined that "this does not change the fact that the claims Motor Dispatch forwarded were found to be unsupported by convincing evidence." *Id.* at 352, 379 N.E.2d at 546.

[18] In this case, Clancy testified at the hearing that he had sued Terry's "based off of his breach of contracts." Tr. Vol. II p. 65. It is well-settled that "[w]hen one party to a contract commits the first material breach of that contract, it cannot seek to enforce the provisions of the contract against the other party if that other party breaches the contract at a later date." *Coates v. Heat Wagons, Inc.*, 942

N.E.2d 905, 917 (Ind. Ct. App. 2011). Clancy's testimony indicated that many, if not all, of his claims had been related to his breach-of-contract claim. Furthermore, Terry's had prevailed against Clancy on all of Clancy's claims and on its own breach-of-contract claim. At the hearing on attorney's fees, Murphy testified that litigating the prosecution of a claim for breach of contract and defending such a claim "would be pretty much the same." Tr. Vol. II p. 18. Murphy further testified that each of Clancy's claims had included an incorporation by reference paragraph, which incorporated "all of the claims prior and subsequent to the breach of contract claim[.]" Tr. Vol. II p. 19.

[19] Calhoun testified that he had worked "at most two hours" on the abuse-of-process claim "because everything else was relating to the breach of contract and Mr. Clancy -- which were also Mr. Clancy's claims, ancillary claims, that he incorporated that claim." Tr. Vol. II p. 52. Calhoun also testified that Clancy had incorporated each of his claims into his breach-of-contract claim, and "kind of threw everything at the wall." Tr. Vol. II p. 42.

[20] The record supports a conclusion that defending against Clancy's claims had been, from the perspective of Terry's, effectively indistinguishable with prosecuting its own breach-of-contract claim, despite the fact that Clancy had beaten Terry's to the courthouse. Furthermore, and notably, Clancy conducted no cross-examination contradicting Calhoun or Murphy's testimony regarding whether the fees could be separated further, despite having ample opportunity to do so. The trial court's failure to separate the efforts of Terry's in pursuing its own breach-of-contract claim from its efforts in defending against Clancy's

claims did not constitute an abuse of discretion.[2]  *See Buggie*, 177 Ind. App. at 351, 379 N.E.2d at 546.  Clancy's argument amounts to nothing more than a request to reweigh the evidence, which we will not do.  *See Gilday v. Motsay,* 26 N.E.3d 123, 130 (Ind. Ct. App. 2015).

[21]   To the extent that Clancy contends that the evidence was insufficient to support the trial court's order, we disagree.  Calhoun testified that he and Terry's had contracted for an hourly rate of $300.00 for the duration of the case.  Murphy testified that the amount of time that counsel for Terry's claimed to have spent on the case had been reasonable, and that $400.00 per hour was a reasonable rate for the work, based on the outcome and the education and experience of counsel for Terry's.  Furthermore, Calhoun testified that he had worked around two hours on the abuse-of-process claim, and that his work log which had been admitted as evidence "accurately reflect[ed] the time and hours that [he had] expensed as well as any of [his] associates expensed on this case[.]"  Tr. Vol. II p. 45.

[22]   In determining the amount of attorney's fees owed, the trial court applied the $300.00 per hour contracted-rate and the amount of hours that Calhoun had admitted into evidence, minus three hours for his efforts on the abuse-of-process

---

[2]  Because we conclude that the order on attorney's fees did not constitute an abuse of discretion, we reject Clancy's argument regarding the alleged failure of Terry's to separate the fees in good faith.  Terry's met its burden of proving an appropriate allocation of fees.  Again, in addition to the ample evidence provided regarding to Calhoun's time and efforts spent on this case, Calhoun testified to the amount of time he had spent litigating the abuse-of-process claim, for which fees could not be assessed.  *See Kroger*, 967 N.E.2d at 40.

claim. We conclude that the record supports the trial court's findings and conclusions regarding the reasonableness of Calhoun's hourly rate and the amount of time he had spent on the breach-of-contract claim. The expense log admitted into evidence further supports the trial court's order regarding the $7475.31 incurred in pretrial and trial expenses. We cannot say, based on the record before us, that the trial court abused its discretion in awarding Terry's attorney's fees or expenses.[3] Again, Clancy's argument is nothing more than a request to reweigh the evidence, which we will not do. *See Gilday,* 26 N.E.3d at 130.

[23] We affirm the judgment of the trial court.

Mathias, J., concurs.
May, J., dissents with opinion.

ATTORNEY FOR APPELLANT

Bryan H. Babb
Bose McKinney & Evans LLP
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Benjamen W. Murphy
Law Office of Ben Murphy
Griffith, Indiana

---

[3] To the extent that Terry's requests appellate attorney's fees in the instant matter, but fails to present any argument regarding entitlement to such fees beyond a citation to a case, we reject this request. *See* Indiana Appellate Rule 46(A)(8)(a); *see also Smith v. State*, 822 N.E.2d 193, 202–03 (Ind. Ct. App. 2005) ("Generally, a party waives any issue raised on appeal where the party fails to develop a cogent argument or provide adequate citation to authority and portions of the record."), *trans. denied.*

**May, Judge, dissenting with separate opinion.**

I respectfully dissent. I believe the trial court's award of attorney fees improperly expands recovery past what was authorized by our prior decision in *Terry's Discount Windows & More, LLC v. Clancy* ("*Terry's I*"), No. 23A-PL-1438, 231 N.E.3d 214 (Ind. Ct. App. Feb. 19, 2024) (mem.), and far beyond the parties' narrow contractual limitation to "collection proceedings[.]" (Appellant's App. Vol. II at 36.)

As an initial matter, I note that while a trial court often has discretion to determine a reasonable award of attorney fees, *see Nardi v. King*, 253 N.E.3d 1098, 1103 (Ind. 2025) (reviewing for abuse of discretion the reasonableness of attorney fees awarded under Indiana's Access to Public Records Act), when a trial court must determine the extent to which attorney fees are permitted pursuant to the language used in the parties' contract, we should be reviewing that question of law de novo. *See Thomas v. Valpo Motors, Inc.*, 258 N.E.3d 236, 239 (Ind. 2025) ("The interpretation of a contract is a question of law to which a de novo standard of review applies."). Similarly, when the availability of attorney fees depends on an interpretation of our opinion in the prior appeal between these parties, that question is also one of law that we should review de novo. *See Anon. Hosp. v. Spencer*, 158 N.E.3d 380, 384 (Ind. Ct. App. 2020) (appellate court "owes no deference" to trial court's interpretation of case law), *trans. denied; see also Nardi*, 253 N.E.3d at 1103 (reviewing "any legal conclusions de novo").

In *Terry's I*, we determined Terry's could recover attorney's fees for its breach-of-contract claim due to the fact that "claim is a collection proceeding because [Terry's] brought the claim to collect the outstanding balance of $13,530." *Terry's I* at *3. We distinguished Terry's abuse-of-process claim, explaining that "[t]he contracts provided only for recovery of 'attorney fees incurred in connection with' 'legal proceedings for the collection of the balance then outstanding,' and only the breach-of-contract claim involved such collection." *Id.* at *4 (quoting the parties' contract).

Our analysis was precise and limited. It examined Terry's breach-of-contract claim and Terry's abuse-of-process claim, but it made no determination about fee recovery for defending against Clancy's separate claims for fraud, negligence, and statutory violations. Our silence on defensive work was not an endorsement of broad fee recovery – it reflected instead that the issue of defensive work had not been raised. Had Terry's believed all defensive work qualified for fee recovery as "collection proceedings" then I would expect Terry's to have raised that issue in the initial appeal, particularly given the substantial fees at stake.

Because the issue was not decided in the prior appeal, the appropriateness of an award of attorney fees to Terry's for defending against Clancy's claims depends on the language used in the parties' contract. When interpreting a contract, we review the document as whole and try to determine the parties' intent without making "any words, phrases, or terms ineffective or meaningless." *Thomas*, 258 N.E.3d at 241 (quoting *Performance Servs., Inc. v. Hanover Ins. Co.*, 85 N.E.3d

655, 659 (Ind. Ct. App. 2017)). If a contract's terms are "clear and unambiguous," we give the contract's words their "plain and ordinary meaning" and enforce the contract's terms. *Id*. (quoting *Performance Servs.*, 85 N.E.3d at 660). "To the extent the contract reveals any ambiguities, those ambiguities are generally construed against the drafter." *Id*.

[29] The parties' fee-shifting provision is specifically limited to "attorney fees incurred in connection with such collection proceedings" for "the collection of the balance then outstanding and unpaid under this Purchase Contract." (Appellant's App. Vol. II at 36.) This language contemplates a narrow category of legal work: affirmative efforts to collect an unpaid debt. "Collection" in this context means the active pursuit of money owed, not defense against any claim that happens to arise from the same contractual relationship. The distinction is legally and practically significant. Collection proceedings are inherently offensive in nature – they involve a creditor seeking to recover what is owed. Defending against fraud, negligence, or statutory claims involves fundamentally different legal work, even when those claims arise from the same underlying transaction, because such defensive work protects against potential liability rather than pursuing recovery of an existing debt.

[30] Because of this distinction between pursuing an existing debt and protecting against potential liability, I believe the majority's reliance on *Motor Dispatch, Inc. v. Buggie*, 379 N.E.2d 543 (Ind. Ct. App. 1978), is misplaced. The contractual language in *Motor Dispatch* provided for the "reasonable costs of collection, including reasonable attorney's fees," *id*. at 351, which is broader than the

"collection proceedings" language here. More critically, in *Motor Dispatch*, the opposing party sued to recover alleged loans and advances that would directly offset the amount owed on the note – classic set-off claims that, if successful, would have reduced the debt dollar-for-dollar. The defensive work in *Motor Dispatch* was thus directly related to protecting the collection amount because successful set-off claims would have reduced what could be collected on the note.

Here, by contrast, Clancy's fraud and negligence claims sought independent affirmative damages against Terry's, not reductions of the amount owed. These claims alleged that Terry's had damaged Clancy through use of wrong materials or poor workmanship – theories that sought to impose liability on Terry's rather than reduce what Clancy owed. Even if Clancy had succeeded on these claims, Terry's would still have been entitled to collect the full $13,530 for work performed. The legal work required to defend against such independent damage claims bears no relationship to collection activity. Defending against fraud claims requires analyzing material specifications, construction standards, and Terry's communications with suppliers. Defending against negligence claims requires examining workmanship standards, property damage causation, and insurance coverage. None of this work serves to collect the unpaid balance – it serves to avoid independent liability exposure – and I accordingly would find it not permitted under the contractual language between these parties.

If Terry's had wished to collect attorney fees in any litigation "relating to" or "arising from" its contracts, it easily could have used such broad language in

[33] the contract. Instead, Terry's drafted a contract that limited attorney's fees to "collection proceedings." I would give that term its plain meaning and reverse the trial court's order for Clancy to pay fees not contemplated by the contract. Accordingly, I respectfully dissent.