John WOODALL, Janet Woodall,
Appellants (Plaintiffs Below),

v.

CITIZENS BANKING COMPANY, James
Johnson, Johnson, Ritchart and Associ-
ates, Appellees (Defendants Below).

No. 80A04–8601–CV–18.

Court of Appeals of Indiana,
Fourth District.

Jan. 29, 1987.

James E. Freeman, Jr., Sansberry, Dick-
mann, Freeman & Builta, Anderson, for
appellants.

Robert A. Smith, Jane E. Magnus, Indi-
anapolis, C. Michael Cord, Kokomo, for ap-
pellees.

YOUNG, Judge.

John and Janet Woodall appeal the Tip-
ton Circuit Court's entries of partial and
final summary judgment in favor of Citi-
zens Banking Company. The only issue
raised by this appeal is whether Citizens, as
a mortgagee who disbursed the proceeds of
a construction loan made to the Woodalls,
had a duty to protect the Woodalls from
mechanics liens.[1] We affirm.

On October 25, 1978, John and Janet
Woodall executed a note and mortgage in
favor of Citizens Banking Company. The
mortgaged property was a residence that
was in the process of being constructed by
Ren Corporation under the supervision of
Johnson, Ritchart & Associates, Inc., an
architectural firm. In the mortgage the
Woodalls agreed to "warrant and defend
generally the title to the property against
all claims and demands" and to "promptly
discharge any lien which [had] priority over
[the] Mortgage."[2] In addition to the note
and mortgage, the Woodalls executed a
Loan Settlement Statement which provided
that the funds were to be disbursed by
Citizens "as construction progresses in

---

1. A second issue was presented by the Woodalls: whether the trial court, contrary to the law and the evidence, erred in holding that the Woodalls waived the bank's duties by express contractual provisions. We, however, do not consider the issue to be one of waiver; rather, the issue is whether the contractual provisions prevented the imposition of a duty upon Citizens. Therefore, we have consolidated the two issues.

2. The Woodalls argue that the provision requiring them to promptly discharge liens having priority over the mortgage is inapplicable be-

cause the mechanics liens in this case would be on parity with rather than superior to the mortgage. We do not find this argument persuasive. In the mortgage the Woodalls agreed that they would warrant and defend generally the title to the property against all claims and demands. Furthermore, the Woodalls do not dispute that when Citizens suggested they obtain a perform- ance or a completion bond, they refused and stated that they would "stand good for any prob- lems which might arise concerning mechanics liens."

strict accordance with plans and specifications and approved by Johnson, Ritchart & Associates, Inc." The Woodalls signed the statement and thereby acknowledged its receipt, agreed to its correctness and authorized and ratified the disbursement of the funds as it provided. Citizens required that the loan proceeds and $35,000.00 of the Woodalls' personal funds be deposited with it to insure that sufficient funds were available to pay for the construction. A 5%–10% retainage fund was also created.

Ren made periodic requests to the architect for payment on an Application and Certificate for Payment Form. Each certificate allegedly contained the following statement:

The undersigned Contractor certifies that the Work covered by this application for Payment has been completed in accordance with the Contract Documents, that all amounts have been paid by him for work for which previous certificates for Payment were issued and payments received from the Owner, and that the current payment shown herein is now due.

Contractor:

By:

In accordance with the Contract and this Application for Payment the Contractor is entitled to payment in the amount shown above.

Architect:

By:

Ren's twelve Application and Certificate for Payment Forms were forwarded to Citizens. Citizens issued two checks payable only to Ren on the first application. This was done at closing and approved by the Woodalls in the Loan Settlement State-

ment. On the next eight applications, checks were issued payable to the Woodalls and Ren. On applications ten and eleven, Citizens issued checks payable only to the Woodalls but with the following endorsement on the back:

Pay to the order of

_____

Contractor
  For Deposit Only

_____

Mortgagor

_____

Mortgagor

During the course of construction, one lien waiver was obtained from Ren.[3] Additionally, a Citizens official periodically and randomly checked with subcontractors to verify that they had received payment from Ren.[4] Between July 9, 1979 and July 17, 1979, however, the Woodalls became concerned that Ren would not be able to complete the residence with the funds remaining on deposit with Citizens. The Woodalls refused to endorse the check issued for Ren's ninth Application and Certificate for Payment. Upon the architect's and Citizens' alleged assurances that the construction loan proceeds would be disbursed only pursuant to the architect's approval and that the construction bills were paid, the Woodalls endorsed the check. They later, however, refused to endorse the check issued by Citizens for Ren's eleventh Application and Certificate for Payment. Citizens refused to issue a check for Ren's twelfth Application and Certificate for Payment, which had been approved by the architect, upon learning that the balance due Ren's materialmen exceeded the remaining balance in the Woodalls' Construction Loan

---

**3.** The Woodalls contend that this lien waiver was secured by Citizens. Citizens argues that this is not supported by any evidence in the record. In reviewing a summary judgment, however, all facts set forth by the nonmoving party are assumed to be true. *First Sav. and Loan Ass'n v. Treaster* (1986), Ind.App., 490 N.E.2d 1149. Therefore, we must assume the lien waiver was obtained by Citizens.

**4.** The Woodalls contend that Citizens voluntarily assumed the duty to protect them from me-

chanics liens by obtaining the lien waiver and periodically verifying payment with materialmen. This argument is unpersuasive. A voluntary assumption by Citizens of the duty to protect the Woodalls from mechanics liens would constitute a modification of the mortgage agreement between the parties. The mortgage was required to be in writing, IND.CODE 32–2–1–1, and therefore any modification of it was required to be in writing. *Bradley v. Harter* (1901), 156 Ind. 499, 60 N.E. 139.

Fund.[5] Ren stopped work as a result of Citizens' refusal to issue the check. Ren filed a mechanics lien for the amount of its unpaid bills. In addition, seven of Ren's materialmen filed mechanics liens.[6]

Three of the materialmen filed suit to foreclose their mechanics liens and the Woodalls filed a third-party complaint against Citizens, alleging that Citizens had a duty to protect them against mechanics liens through either an express agreement, custom and practice, or as a result of their relationship. Citizens defended on the grounds that the language in the mortgage negated any duty on its part and, after extensive discovery, moved for summary judgment. On February 25, 1983, the trial court granted partial summary judgment in favor of Citizens, listing two remaining questions of fact. These questions were as follows:

1. Whether local custom and practice in Madison County, Indiana imposed a duty upon CITIZENS BANKING COMPANY to protect WOODALLS and their Free Road property from mechanics liens.

2. Whether any such duty arising from local custom and practice can be rendered inapplicable because of the course of the parties' dealings, the agreement of the parties, and of the representations of the mortgagor to the mortgagee.

On July 22, 1985, the trial court entered final summary judgment in favor of Citizens.

The Woodalls primarily rely upon *Prudential Ins. Co., Etc. v. Executive Estates* (1977), 174 Ind.App. 674, 369 N.E.2d 1117, for the proposition that Citizens had a duty to protect them and their property from mechanics liens. In *Prudential*, the Second District held that Prudential, the mortgagor, had a duty to protect Executive

Estates, its mortgagee, from mechanics liens. The court found that the duty arose from the express agreement of the parties, the custom and practice in the local real estate community, and the relationship of the parties. *Prudential*, however, is distinguishable from this case on all three points.

In *Prudential*, the mortgagee, specifically told the mortgagor, who was concerned about mechanics liens, that it would take care of the liens at closing. While the Woodalls argue that Citizens expressly agreed to protect them from mechanics liens, they state in their brief that the facts "indicate overwhelming support for the conclusion that ... both parties assumed the other party was responsible, and the parties miscommunicated to each other what they believed to be or wanted to be their respective duties." (Appellants' Brief at 27) Furthermore, the mortgage provided that the Woodalls would warrant and defend generally the title to the property against all claims and demands and that they would promptly discharge any lien which had priority over the mortgage. From these facts, it is clear that Citizens did not expressly agree to protect the Woodalls from mechanics liens. Rather, the Woodalls expressly agreed to protect Citizens from them.

The fact that the Woodalls agreed to protect Citizens from mechanics liens also distinguishes this case from *Prudential* on the issue of whether Citizens had a duty to protect the Woodalls by virtue of the custom and practice in the local real estate community. In *Prudential*, the court stated:

Where a usage in a particular trade or business is known, uniform, reasonable, and not contrary to law, or opposed to public policy, evidence of such usage may be considered in ascertaining the other-

---

5. The total of the Woodalls' Construction Loan Fund was $250,300.00. At the time Citizens refused to issue the check to Ren, $279,759.00 had been expended. Ren had been paid $140,-115.65 but was still owed $42,028.40 under the contract. Ren, however, owed bills to suppliers in the amount of $53,493.64.

6. All of the materialmen who filed liens were listed by Ren in its itemization of unpaid bills. Hence, it appears that the amount claimed by these suppliers was included in the amount claimed by Ren rather than in addition to it.

wise uncertain meaning of a contract, unless the proof of such usage contradicts the express terms of the agreement.

174 Ind.App. 674, 369 N.E.2d 1117, 1126, quoting *Morningstar v. Cunningham* (1887), 110 Ind. 328, 334–35, 11 N.E. 593, 56. Even assuming that it was the Madison County custom and practice for the mortgagee to protect the mortgagor from mechanics liens, evidence of such a custom or practice would contradict the express terms of the Woodalls' agreement with Citizens. Hence, such evidence may not be considered in this case, even though it was considered in *Prudential*.

*Prudential* is also distinguishable from this case in regard to the duty created by virtue of the relationship between the parties. In *Prudential*, the court found an agency relationship existed:

> A mortgagee-lender who insists on controlling disbursement of the loan proceeds in order to protect its own interests (mortgage lien), deprives the mortgagor of possession of the loan proceeds for which he was bargained, and in doing so must equitably be considered as the mortgagor's agent saddled with a duty to use reasonable care to protect the principal's interests.

*Prudential*, 174 Ind.App. 674, 369 N.E.2d 1117, 1128. While the Woodalls argue that an agency relationship existed in the present case, we disagree. Citizens did not control disbursement of the loan proceeds to the extent control was exercised by the mortgagee in *Prudential*. In *Prudential*, the mortgagee made direct disbursements of loan proceeds to third parties. *See Spurlock v. Fayette Federal Sav. & Loan Ass'n* (1982), Ind.App., 436 N.E.2d 811 (distinguishing *Prudential* on this ground). In the present case, the Woodalls' approved the initial disbursement to Ren in the Loan Settlement Statement. The next eight disbursements to Ren required the Woodalls' endorsements before the checks could be cashed. The checks for the last two disbursements intended for Ren were made payable to the Woodalls. Hence, the Woodalls' approval of all disbursements was required either through the Loan Settlement Statement or their endorsements. The Woodalls could have, and in fact did on two occasions, refuse to approve the disbursements. This option was not available to the mortgagor in *Prudential*. Citizens did not totally control the disbursement of the loan proceeds as did the mortgagee in *Prudential*. The Woodalls had, and exercised, final control. Therefore, an agency relationship was not created.[7]

The factual distinctions make *Prudential* inapplicable in this case. The trial court therefore properly found that no duty was imposed upon Citizens to protect the Woodalls from mechanics liens by virtue of the parties' agreement, custom or practice, or the parties' relationship.

The Woodalls also argue that the $250,000 was deposited with Citizens for a specific purpose and therefore a fiduciary duty was imposed upon Citizens to fulfill and execute that purpose according to the terms of the agreement between the parties. We agree. *Teeling v. Ind. Nat. Bank* (1982), Ind.App., 436 N.E.2d 855, 857–858. Citizens, however, did not breach this duty. Citizens was to disburse the deposited funds as construction progressed and was approved by the architect. Each time Citizens disbursed funds, construction had progressed and the payments were approved by the architect. Citizens fulfilled its duty to disburse the deposited funds according to the agreement.

This case presents no genuine issue as to any material fact. Citizens therefore is entitled to judgment as a matter of law. Ind.Rules of Procedure, Trial Rule 56. The

---

7. The Woodalls contend that Citizens admitted that an agency relationship of "varying magnitudes" existed between the parties and that Citizens therefore had a duty to inform the Woodalls of the importance of the fact that construction had begun before the mortgage was acquired. The Woodalls, however, failed to present this argument in their motion to correct errors. Therefore, the argument is waived. Ind.Rules of Procedure, Trial Rule 69(D)(2), Appellate Rule 8.3(A)(7).

trial court therefore properly entered summary judgment in favor of Citizens.

Affirmed.

CONOVER, P.J., and MILLER, J., concurs.