**Lawrence H. CRUM, Jr., and Patricia R. Crum, Appellants,**

v.

**AVCO FINANCIAL SERVICES OF INDIANAPOLIS, INC., Appellee.**

No. 23A01-8905-CV-185.

Court of Appeals of Indiana, First District.

April 9, 1990.

Leslie P. Simpson, Indianapolis, for appellants.

Augustus H. Tabor, Terre Haute, for appellee.

ROBERTSON, Judge.

Lawrence H. Crum, Jr. and Patricia Crum (the Crums) appeal the entry of an adverse judgment in favor of appellee-defendant Avco Financial Services of Indianapolis, Inc. (AVCO).

We affirm.

On or about June 1, 1985, the Crums entered into an agreement with Charlene S. Diemer as personal representative of the estate of Charles S. Douglas (the Estate) for the purchase of certain real estate. The Estate retained Charles Crowder, a real estate agent, to represent its interests in the sale.

The Crums sought financing for their purchase from AVCO. On June 14, 1985, the Crums met with a representative of AVCO to execute a promissory note and mortgage applicable to the subject property. No other persons were present. At that time, AVCO disclosed that sums expended by AVCO for its attorney's fees, document recording fees and for a policy of title insurance in AVCO's favor would be reimbursed by the Crums from the loan and disbursed by AVCO.

AVCO finalized the loan transaction on or about June 25, 1985, when it distributed the loan proceeds in accordance with the terms of the loan documents executed on June 14, 1985. AVCO released the loan proceeds and made distributions even though, due to a misdescription of the real estate, it was unable to record its mortgage the preceding day.

Crowder received payment for the Estate in the form of a check which he took to the Crums for endorsement. He did not deliver a deed. The Crums did not retain legal counsel at any point in the real estate transaction and did not purchase a title policy insuring their interests.

The Crums initiated this action after they failed to make payment on the note in an effort to obtain compensation for the losses they purportedly sustained as a consequence of their inability to sell or mortgage the real estate. In part, AVCO responded by counterclaim, seeking a judgment on the note and foreclosure of its mortgage. The Crums' claim against AVCO proceeded to trial without a jury along with the issue of AVCO's attorney's fees. AVCO succeeded in obtaining a summary judgment on its counterclaim and an order of foreclosure.

The trial court granted AVCO's Ind.Trial Rule 41(B) motion for involuntary dismissal at the close of the Crums' evidence. The court reiterated its determination, that the Crums had failed to carry their burden of proof, in ruling upon the Crums' motion to correct error. It also found the motion to correct error to be untimely. The Crums contest both determinations in this appeal. AVCO challenges the adequacy of the award of attorney's fees.

## I.

The Crums maintain that their motion to correct error was timely. It is their position that the court did not render a judgment from which they could appeal until March 13, 1989, when the court approved and signed the formal entry prepared by AVCO. The trial court ruled that its docket entry of March 1, 1989,[1] by

---

1. The trial court's March 1, 1989, docket entry reads:

The Court having had the matter of attorney's fees for the counter-claimant AVCO under ad-

which the court announced its decision on the issues remaining between the parties, constituted an appealable final order from which the sixty-day period for filing began to run.[2]

The question of whether the trial court's docket entry of March 1, 1989, constituted an appealable final order can be resolved by applying the provisions of T.R. 54(B), 58(B),[3] and this court's decision in *First Federal Savings & Loan Ass'n v. Stone* (1984), Ind.App., 467 N.E.2d 1226, *trans. denied.*

In *Stone*, we considered whether a docket entry denying foreclosure, granting a counterclaim and directing one of the parties to prepare an order for approval constituted a final judgment for purposes of T.R. 59(C). The Indiana Supreme Court had earlier determined that that particular docket entry constituted a "ruling or decision" for purposes of T.R. 53.1(C) sufficient to withstand First Federal's request to withdraw the case from the judge. Noting that the supreme court's decision did not necessarily mean that the docket entry was a final appealable judgment, we held that the docket entry was a decision upon which a judgment had not been entered and was not final. The entry did not put an end to the case but required the preparation of a written judgment with findings to be approved by the judge. It did not contain a determination of damages on Stone's counterclaim. It did not contain an entry of judgment but appeared only to memorialize notification of the parties of the decision. And, the text of the entry suggested that the court did not intend the entry to be viewed as a final judgment.

The entry of March 1, 1989, in the present case has many of the same charac-

---

2. On March 16, 1989, the Indiana Supreme Court issued an order allowing for a period of transition to the recently-amended trial rules. The order permits a party who received a judgment prior to July 1, 1989, to operate under the amendments which became effective January 1, 1989. The January 1, 1989, amendment to T.R. 59(C) removed the motion to correct error as a jurisdictional prerequisite to appeal but retained the sixty-day period embraced by the prior rule. Consequently, a motion to correct error in a judgment entered in March, 1989, would be timely if filed not later than sixty days after the entry of a final judgment or an appealable final order.

3. T.R. 54(B) provides that an order or other form of decision which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties is not final in the absence of express written direction for the entry of judgment and a determination that there exists no reason for delay.

Section (B) of T.R. 58 became effective November 13, 1989. It provides:

(B) Content of Judgment. Except in small claims cases, a judgment shall contain the following elements:

(1) A statement of the submission indicating whether the submission was to a jury or to the Court; whether the submission was upon default, motion, cross-claim, counterclaim or third-party complaint; and if the submission was to less than all issues or parties, such other matters as may be necessary to clearly state what issue is resolved or what party is bound by the judgment.

(2) A statement of the appearances at the submission indicating whether the parties appeared in person, by counsel, or both; whether there was a failure to appear after notice; and whether the submission was conducted by telephone conference.

(3) At the court's discretion and in such detail as it may deem appropriate, a statement of the court's jurisdiction over the parties and action and of the issues considered in sufficient particularity to enable any party affected by the judgment to raise in another action the defenses of merger, bar or claim or issue preclusion.

(4) A statement in imperative form which clearly and concisely sets forth the relief granted, any alteration of status, any right declared, or any act to be done or not done.

(5) The date of the judgment and the signature of the judge.

The footnote beginning on the previous page (continuation): visement, having also the claim of plaintiff against defendant Diemer under advisement and being duly advised does now find and adjudge that AVCO recover from plaintiff Crums' $3000 as attorney's fees relating to the foreclosure of mortgage herein, to be recovered along with corrected judgment entered on motion for summary judgment of said counter-claimant as per order of the Court on February 24, 1989. And the Court being further advised finds and adjudges that the plaintiff recover from defendant Diemer the sum of $5624.22. The mortgage of AVCO is ordered foreclosed and counsel for AVCO ordered to submit to the Court formal entry incorporating the Court's order of October 7, 1988, as amended on February 24, 1989, the Court's order of January 12, 1989, as it relates to judgment of Clinton State Bank and the judgment entered this date for the Court's approval.

teristics. The entry discloses that the court had reached a decision on the last of several issues which needed to be determined to finally end the litigation. The entry directs counsel for AVCO to prepare a formal entry incorporating the court's order of summary judgment in favor of AVCO on the note and mortgage; the January 12, 1989, order in favor of the Clinton State Bank on its "first lien;" its order of $3000 for AVCO's attorney's fees; and, its decision against Diemer and in favor of the Crums in the amount of $5624.22. The docket entry does not specifically refer to the court's decision against the Crums on their complaint which was announced January 12, 1989.

The January 12, 1989, docket entry which announced the court's decision on AVCO's complaint did not purport to dispose of all the issues and it did not meet the T.R. 54(B) prerequisites of an appealable order. The formal instrument submitted by AVCO on March 13, 1989, is the only document which both refers to the Crums' complaint and complies with the content requirements of T.R. 58(B). It is for these reasons that we conclude that the Crums' motion to correct error was timely because it was filed within sixty days of the court's final judgment, which was rendered and signed March 13, 1989.

## II.

### A.

The Crums contend that AVCO was negligent in four respects proximately causing them financial loss. First, they argue that AVCO breached the duty it had assumed by undertaking to distribute the loan proceeds to disburse their funds prudently and in such a manner as to protect their interests. Second, the Crums contend that AVCO failed to provide them with the legal representation for which they had paid. Third, the Crums maintain AVCO had a contractual duty to ensure they obtained marketable title which it failed to perform. And fourth, by charging them recording fees, AVCO became responsible for recording the deed which it failed to do, ultimately resulting in their injury.

Both parties have devoted their argument to the issue of duty. Although the trial court's ruling may be sustained by a review of the evidence of breach and proximate cause, we will address briefly the extent to which the law recognizes an obligation on the part of AVCO to conform its conduct to a certain standard for the benefit of the Crums.

Accompanying every contract is a common law duty to perform the thing agreed to be done with care, skill, and faithfulness. *Shriner v. Union Federal Savings* (1955), 126 Ind.App. 454, 459, 125 N.E.2d 168. Indeed, it has long been the rule in Indiana that one who undertakes by contract to perform a service not only owes a duty of diligence to his contracting counterpart but also owes a general duty to perform the service with reasonable care. *Flint & Walling Mfg. Co. v. Beckett* (1906), 167 Ind. 491, 79 N.E. 503. The negligent performance of a contract may give rise to liability in tort. *Essex v. Ryan* (1983), Ind. App., 446 N.E.2d 368, 371.

■ It follows then that a lender who agrees to disburse loan proceeds is bound to exercise due care in the performance of this obligation. As we noted in *Prudential Ins. Co. v. Executive Estates* (1977), 174 Ind.App. 674, 369 N.E.2d 1117, 1123, *trans. denied,* the proceeds of a loan are part of the consideration for the borrower's note and mortgage. A lender who retains the funds pending distribution and who in fact distributes the loan proceeds is not totally free to disregard the interests of the borrower. A mortgagee who agrees to apply the proceeds for a certain purpose is liable for a failure to do so, *Prudential,* 369 N.E.2d at 1124 citing 59 C.J.S. *Mortgages* § 297, p. 370 (1949) or negligence in the performance of that duty. AVCO undertook the responsibility of disbursing the Crums' loan proceeds. It therefore had a duty to exercise reasonable care in performing its obligation of distribution.

AVCO adamantly contests the assertion that it had an obligation to furnish the Crums with legal services, ensure they received marketable title, or record their

deed. The Crums point to the federal disclosure statement as evidence of AVCO's agreement to provide them with legal, title and recording services. The section they rely upon is entitled "Amounts Paid to Others on Your Behalf" and shows a charge to Joe Beardsley, $150; Public Officials, $21.00; and "Record Data" "For Title Insurance," $403.

In interpreting a written contract, the court will attempt to determine the intent of the parties at the time the contract was made as disclosed by the language used to express their rights and duties. *Jones v. City of Logansport* (1982), Ind.App., 436 N.E.2d 1138, 1144. If the contract is ambiguous or uncertain in its terms, rules of contract construction and extrinsic evidence may be employed in giving effect to the parties' reasonable intentions. If the meaning of the contract is to be determined by extrinsic evidence, its construction is a matter for the fact finder, *id.*, who must ascertain the facts necessary to construe the contract. *Midwestern Indemnity Co. v. Leffler Construction Co.* (1984), Ind.App., 463 N.E.2d 1130, 1133.

The phrase "on your behalf" does suggest two reasonable interpretations. On the one hand, the contract could be interpreted to mean "amounts paid for your benefit" as the Crums have proposed. However, given the document's overall tone and structure as a statement of terms and conditions, and the fact that it does not expressly purport to provide services, it is equally likely that the parties intended the phrase to mean "amounts paid by us as your representative." Accordingly, we must review the extrinsic evidence considered by the trial court. In doing so, we use the standard of review applicable to a T.R. 41(B) motion for involuntary dismissal.

We note that the trial court weighs the evidence when ruling upon a T.R. 41(B) motion. *State v. Mayfield* (1989), Ind.App., 536 N.E.2d 294, 295. The trial court is permitted to believe or disbelieve testimony or other evidence and may find against the party presenting the evidence, even if there is no evidence to the contrary. *State v. Vowels* (1989), Ind.App., 535 N.E.2d 146, 147. On review, this court may reverse a negative judgment only where the evidence is without conflict and points unerringly to a conclusion different from that reached by the trial court. In other words, an appealing plaintiff can prevail only if he or she is entitled to a judgment as a matter of law. *Monk v. Peabody Coal Co.* (1988), Ind. App., 530 N.E.2d 761, 763, *trans. denied.*

■ The extrinsic evidence favorable to the interpretation adopted by the trial court discloses that a representative of AVCO explained to the Crums at the time they executed the loan documents that Joe Beardsley was *AVCO's* attorney. In addition, AVCO's branch manager testified that the various entries in the disclosure statement were discussed with the Crums before the document's execution on June 14, 1985, and that the Crums understood and agreed that the title insurance policy would be obtained by AVCO for its own protection but paid for by the Crums. Although the evidence reflecting on the parties' understanding concerning the documents to be recorded by AVCO is sparse, AVCO's manager did testify that the fee paid to "Public Officials" represented sums to be expended in recording AVCO's mortgage, which AVCO would record twice, before and after disbursement. Upon this evidence, the trial court could properly have concluded that AVCO did not assume a contractual duty, by reason of its disclosure of sums to be disbursed from loan proceeds, to provide the Crums with legal services, ensure they obtained marketable title, or record the deed.

■ Alternatively, the Crums argue AVCO's contractual duty to ensure they received marketable title arose from its agreement to loan.[4] However, a fair read-

---

4. The "Contract to Loan" reads in part:
   Lender hereby agrees to lend and Borrower(s) hereby agrees to borrow from Lender ... upon the following *conditions:*

   (a) that the real property ... described in said mortgage ... will be free and clear of any and all liens, encumbrances and encroachments on the date the proceeds of said loan are actually disbursed, except for a first

ing of the contract leads to the conclusion that the provision addressing marketable title was not intended as a covenant at all but rather a statement that both parties' duties to perform under the contract depend upon the fulfillment of the agreement's conditions. Generally, a condition which has been inserted for the benefit of one party may be voluntarily waived by that party if it wishes to proceed despite the failure of the condition. *Parrish v. Terre Haute Savings Bank* (1982), Ind. App., 431 N.E.2d 132, 135, *trans. denied.* Once a condition precedent has been waived and such waiver has been acted upon, the failure to perform the condition cannot be insisted upon as a forfeiture of the contract. *Id.*

AVCO did not agree to insist upon marketable title; it agreed to loan upon the condition that the Crums obtain title acceptable to AVCO. It follows that this condition may not be relied upon as the basis of a contractual duty.

■ Likewise, the evidence does not necessarily compel the conclusion that a duty to provide legal services, insist upon marketable title or record the deed arose from custom and practice as the Crums contend. There is no evidence whatsoever in the record from which it might be inferred that AVCO or any local lender engaged in the practice of hiring an attorney to represent the borrower's interests. Although other lending institutions in the area would not disburse the proceeds of a loan until all requirements of the title insurer had been met and their employees had obtained possession of the deed, AVCO reserved the right by contract to dispense with both custom and practice and the requirement of title insurance if it so desired. *Compare Woodall v. Citizens Banking Co.* (1987), Ind.App., 503 N.E.2d 427, 430; *Prudential,*

369 N.E.2d at 1126. Similarly, testimony of the branch manager established that this AVCO office had no set custom as to who among the parties would record the conveyance. He expected the Crums or Crowder Realty to handle that responsibility in this transaction.

■ The Crums also argue that AVCO's agreement to disburse the loan proceeds created an agency relationship from which a fiduciary duty arose on AVCO's part to act primarily in the Crums' interest.[5] The understanding that one is to act primarily for the benefit of another is the determinative feature in distinguishing an agency relation from other relations. Restatement (Second) of Agency § 14(B) (1957). One who holds a power created in the form of an agency authorization, but given for the benefit of the power holder, is not an agent for the one creating the power since the power is not held for the benefit of the power giver. *Id.;* § 14(H), comment a; § 138, comment b. Typically, mortgagees are not agents for the mortgagor; they have not undertaken to exercise such power primarily for the benefit of the mortgagor. *Cf., Woodall v. Citizens Banking,* 503 N.E.2d 427 and *Spurlock v. Fayette Fed. Sav. & Loan Ass'n* (1982), Ind.App., 436 N.E.2d 811 with *Prudential,* 369 N.E.2d 1117 (existence of agency relation identified by extent of control exercised over disbursement of proceeds). *Accord,* Restatement § 14(B).

Testimony elicited by AVCO from its branch manager and that from the other local lenders established that steps taken by AVCO and the other lenders, such as controlling the disbursement of loan proceeds, were undertaken as a means of protecting the lender, not the borrower. To the extent then that the existence of a

---

mortgage/trust deed in favor of Clinton State Bank ... and provided further that prior to disbursement, Lender has been furnished a policy of title insurance from a title insurer acceptable to it so insuring, or at its option, has been otherwise satisfied that Mortgagor's title is acceptable ... (Emphasis supplied).

5. The Crums argue only that AVCO's agreement to disburse the loan proceeds created an agency

relationship. Assuming AVCO had a fiduciary duty created by its undertaking to disburse the loan proceeds, necessarily such a duty would be limited in scope and operation to the subject matter of the undertaking. The Crums are therefore precluded from arguing that AVCO became their agent for all purposes or for purposes of obtaining legal services and marketable title or recording.

fiduciary duty turned upon a factual conflict over whether AVCO was acting on the Crums' behalf in disbursing the loan proceeds, the trial court could properly have determined that no duty arose as a consequence of the relationship of the parties.

Of the four claims of negligence, the Crums have succeeded in demonstrating only that AVCO had a contractual duty to exercise reasonable care in the disbursement of the loan proceeds. In all other respects, they have failed to state a viable cause of action as a matter of law.

### B.

Viewing the evidence in the light most favorable to the trial court's verdict, we are not persuaded that the evidence leads solely to the conclusion that AVCO failed to use reasonable care in distributing the loan proceeds. As AVCO asserts and the Crums concede, AVCO disbursed the proceeds as it indicated it would in the disclosure sheet executed by the Crums on June 14, 1985. Necessarily then, the Crums must be arguing that AVCO acted unreasonably and without the requisite prudence when it proceeded to distribute the loan proceeds on June 25, 1985, after learning that its mortgage contained a misdescription of the subject property.[6]

The evidence established that settlement of the loan occurred over a period of about eleven days. There is no evidence that, with respect to closing the real estate transaction as a whole, AVCO did anything to indicate it would assume responsibility for coordinating the exchange of muniments or consideration other than as it indicated it would do on the disclosure statement. AVCO's branch manager reviewed the title insurance commitment, knew the commitment required a properly executed deed but believed the terms of the commitment had been met when the funds were released. Neither employee of AVCO who worked on the loan actually saw a deed but it was established that Crowder, who worked with AVCO on behalf of the Estate, saw a copy of an administratrix deed in the Estate's file at the courthouse on June 22, 1985. The legal description used by AVCO to prepare the mortgage and obtain title insurance had been furnished by the Estate. All of the documents in AVCO's possession on June 24, 1985, when AVCO's branch manager discovered that the legal description was defective, contained the same description. On June 25, 1985, before disbursing the funds, AVCO obtained the abstract which had not been brought up to date from the Crums and took the abstract to its attorney. AVCO did not disburse the funds until it obtained verbal authorization from its attorney.

The Crums did not benefit the court with testimony from AVCO's attorney concerning the decision to authorize disbursement. The inference the Crums would like the court to draw from the absence of this evidence is that it was AVCO's attorney-agent who was negligent in authorizing the distribution. However, not being privy to the circumstances affecting the attorney's decision to authorize disbursement, we cannot discern that the conduct of AVCO in proceeding to disburse was unreasonable. Negligence cannot be established by inferential speculation alone. *Ogden Estate v. Decatur County Hospital* (1987), Ind.App., 509 N.E.2d 901, 903, *trans. denied.* A trier of fact can infer negligence from the facts proved, but it cannot infer the existence of the facts which would constitute negligence. *Pardue v. Seven–Up Bottling Co. of Indiana* (1980), Ind.App., 407 N.E.2d 1154, 1159. The trial could have properly concluded

---

**6.** The duty to exercise reasonable care may be breached by a party to a business transaction who fails to disclose facts basic to the transaction when he knows that the other party is about to enter into the transaction under a mistake as to the basic facts and his failure to disclose justifiably induces the other to act. *See* Restatement (Second) of Torts § 551 (1965). *Cf., also, McNair v. Public Savings Ins. Co.* (1928), 88 Ind.App. 386, 163 N.E. 290. This theory of liability for nondisclosure is akin to fraud, the circumstances of which must specifically be averred in Indiana. T.R. 9(B); *Wilson v. Palmer* (1983), Ind.App., 452 N.E.2d 426, 428. The Crums did not disclose an intent to rely upon this theory in their pleadings, arguments at trial, motion to correct error or in their briefs.

that the Crums did not adequately prove that AVCO failed to take reasonable care in determining whether to disburse the funds.

We would add that the Crums were alerted that there was a problem with the transaction on the evening of June 24, 1985, when AVCO asked to see the abstract to the property. The court as trier of fact could have chosen to disbelieve Mrs. Crum's protestations that she did not understand the nature of the problem in light of her past experience in purchasing real estate and determined that AVCO's notification of the Crums ·before disbursement was reasonable under the circumstances, particularly since the Crums retained the ability to withhold execution of the Estate's check.

### C.

▮▮▮▮▮ In any event, as we indicated earlier, even if AVCO breached its duty of care, the evidence of record does not lead solely to the inference that AVCO's negligent disbursement of funds was the proximate cause of the Crums' injury. The determination of proximate cause is generally considered a question of fact best left to the trier of fact. *Crull v. Platt* (1984), Ind.App., 471 N.E.2d 1211, 1214, *trans. denied.* The test for determining whether a negligent act or omission is the proximate cause of an injury is whether the injury is a natural and probable consequence which, in light of the circumstances, should reasonably have been foreseen or anticipated. The key is the foreseeability of the ultimate injury as a natural and probable consequence of the act or omission. *Havert v. Caldwell* (1983), Ind., 452 N.E.2d 154, 158.

The Crums maintain that because of AVCO's negligent disbursement of the funds, they were unable to refinance their property and could not sell it, leading ultimately to their default on the note. However, the evidence of record permits other reasonable inferences as to the proximate cause of the Crums' claimed losses, including the Estate's failure to convey legal title and the Crums' own imprudence before and after the transaction. The Crums knew at the time they borrowed that an annual interest rate of 18% was financially disadvantageous for them and that ultimately they would be forced to reduce the amount of their monthly payment. The record also establishes that the Crums knew immediately after the loan was closed that they did not have an executed deed and understood in February, 1986 that they did not have legal title to the property. They also knew that AVCO refused to rectify the title problem. Yet, the Crums chose not to contact an attorney or the Estate concerning the matter. Under these circumstances, we cannot say as a matter of law that AVCO's negligence was the proximate cause of the injury alleged. The trial court did not err in concluding that the Crums failed to carry their burden of proof.

### III.

▮▮▮ AVCO contests the trial court's award of attorney's fees. At trial, AVCO claimed $12,975.00 in fees but the trial court awarded $3,000.00, representing those fees directly related to prosecution of the counterclaim for judgment on the note and foreclosure. The Crums respond that AVCO's challenge to the award of attorney's fees is in essence a claim that a monetary award is inadequate, a challenge which cannot be pursued on appeal in the absence of a motion to correct error.

Effective January 17, 1990, the Indiana Supreme Court amended T.R. 59(A)(2) making a motion to correct error a prerequisite to appeal only when a party seeks to address a claim that a *jury verdict* is inadequate. The most recent amendment of T.R. 59(G), effective January 5, 1990, elucidates that the party prevailing in the denial of a motion to correct error may, without filing a statement in opposition to the motion to correct error, assert grounds for relief in the appellate brief, including grounds falling with section (A)(2) of T.R. 59. Hence, according to revised T.R. 59, AVCO could properly present its contention of an inadequate award of attorney's fees by the trial court in its appellate brief.

When awarding attorney's fees, the trial court is empowered to exercise its sound

discretion and any successful challenge to its determination must demonstrate an abuse thereof. *Zebrowski & Associates v. City of Indianapolis* (1983), Ind.App., 457 N.E.2d 259, 264; *Arnold v. Dirrim* (1979), Ind.App., 398 N.E.2d 426, 441. An abuse of discretion occurs only when the result is clearly against the logic and effect of the facts and circumstances before the court. *Id.* The fact that the same circumstances might justify a different outcome does not permit the substitution of this court's judgment for that of the trial court. *Id.*

As AVCO argues, there are decisions of this court holding a trial court does not abuse its discretion by allowing recovery of fees incurred in defending against claims, counterclaims or crossclaims in addition to those actually involved in collecting on a note. *See, e.g., Mantooth v. Federal Land Bank* (1988), Ind.App., 528 N.E.2d 1132, *trans. denied; Motor Dispatch, Inc. v. Buggie* (1978), 177 Ind.App. 347, 379 N.E.2d 543. Yet, we are not aware of any case which holds that the failure to award fees beyond those actually involved in obtaining a judgment on the note and mortgage necessarily constitutes an abuse of discretion.

The provision of the mortgage document entitling AVCO to attorney's fees reads simply that "in the event of ... default, mortgagor agrees to pay mortgagees reasonable attorney's fees and/or foreclosure costs actually incurred ..." It does not expressly provide for the payment of all attorney fees incurred as a consequence of litigation involving the mortgagor and mortgagee. The procedural history of this case evidences that the issues involved in the Crums' action against AVCO and those involved in obtaining a judgment on the note and mortgage were sufficiently distinct to enable the court to resolve the collection matter independently by summary judgment. What transpires through a lawsuit is indirect evidence of what constitutes a reasonable fee. *Zebrowski*, 457 N.E.2d at 264.

Of the 173 attorney hours expended in prosecuting the foreclosure action and responding to the Crums' lawsuit against

AVCO only 36 hours were related to the attorney's work in prosecuting the foreclosure action through to sheriff's sale. The evidence established that a reasonable hourly fee for the Vigo/Fountain County area would be $75 per hour. The trial court's award of $3,000 is not, based upon this testimony, clearly against the logic and effect of the facts and circumstances before the court.

Judgment affirmed.

RATLIFF, C.J., concurs.

BUCHANAN, J., dissents with separate opinion.

BUCHANAN, Judge, dissenting and concurring.

I concur as to Issues I and III, but must respectfully dissent as to Issue II.

*Prudential Insurance Co. v. Executive States, Inc.* (1977), 174 Ind.App. 674, 369 N.E.2d 1117, *trans. denied,* should control this case. AVCO as mortgagee breached a duty it owed to the Crums, thereby rendering AVCO liable to them for its negligent disbursement of the loan proceeds. In *Prudential,* this court recognized that the mortgagor-mortgagee relationship requires the mortgagee to protect the mortgagor's interest when the mortgagee controls disposition of the loan proceeds:

"A mortgagee-lender who insists on controlling disbursement of the loan proceeds in order to protect its own interests (mortgage lien), deprives the mortgagor of possession of the loan proceeds for which he has bargained, and in doing so must equitably be considered as the mortgagor's agent saddled with a duty to use reasonable care to protect the principal's interest."

*Id.* at 692–93, 369 N.E.2d at 1128.

Reviewing this appeal in a light most favorable to AVCO, the record reflects that the Crums were entitled to judgment as a matter of law. At trial, AVCO admitted that it knew of the property's faulty legal description prior to its disbursement of the loan proceeds. *Record* at 384. The written contract specifically provided that prior to disbursement, AVCO would receive a

policy of insurance on the real estate or that the property would otherwise be acceptable. *Record* at 278. AVCO never recorded a deed transferring title to the Crums, so AVCO did not qualify for the insurance referred to in the contract. *Record* at 396. The title company required AVCO to record the deed and AVCO admitted that their attorney had a duty to do so, but he failed to record the deed. *Record* at 396.

It is true the federal disclosure statement drafted by AVCO did contain a section entitled "amounts paid to others on your behalf" and shows a charge to Joe Beardsley (AVCO's attorney), $150; Public Officials, $21; and "record data" "For Title Insurance," $403, *record* at 280, making the Crums aware of what the disbursemetns would be. This fact, stressed by the majority, is irrelevant.

The relevant fact is that it is undisputed that AVCO exercised *absolute control* over the disbursement of the loan proceeds. The Crums were not even present at the closing. The Crums had neither possession nor control of the proceeds. AVCO proceeded to act on behalf of the Crums as their agent, thereby imposing a duty upon AVCO to perform reasonably, which it did not do. *See Prudential, supra.* The contract language quoted above implies that AVCO had the duty to insure that the property would be free and clear of encumbrances and that the title would be marketable. *See Prudential, supra.* As was true in *Prudential,* AVCO was intimately involved in every aspect of the lending process, and the relationship between AVCO and the Crums was clearly that of agent and principal. *See id.*

Although a mortgagee is not always liable for failing to protect a mortgagor's interest, the circumstances surrounding the transactions between AVCO and the Crums are clearly distinguishable from those cases which have reached the opposite result. In *Woodall v. Citizens Bank Co.* (1987), Ind.App., 503 N.E.2d 427, *trans. denied,* the mortgagor-borrower expressly agreed to warrant and defend title to the property against all claims, and to dis-

charge liens on the property. Moreover, the mortgagee did not control disbursement of the proceeds to the extent that it was exercised by the bank in *Prudential.* In *Woodall,* some of the proceeds were made payable to the mortgagor who finally disbursed the funds to third parties. In affirming the trial court's grant of summary judgment in favor of the mortgagee upon the allegation that the bank had breached a duty to protect the mortgagors from mechanic's liens, this court distinguished *Prudential* and determined

> "Citizens did not control disbursement of the loan proceeds to the extent control was exercised by the mortgagee in *Prudential.* In *Prudential,* the mortgagee made direct disbursements of loan proceeds to third parties. *See Spurlock v. Fayette Federal Sav. & Loan Ass'n* (1982), Ind.App., 436 N.E.2d 811 (distinguishing *Prudential* on this ground). In the present case, the Woodalls' [sic] approved the initial disbursement to Ren in the Loan Settlement Statement. The next eight disbursements to Ren required the Woodalls' endorsements before the checks could be cashed. The checks for the last two disbursements intended for Ren were made payable to the Woodalls. Hence, the Woodalls' approval of all disbursements was required either through the Loan Settlement Statement or their endorsements. *The Woodalls could have, and in fact did on two occasions, refuse to approve the disbursements. This option was not available to the mortgagor in Prudential. Citizens did not totally control the disbursement of the loan proceeds as did the mortgagee in Prudential. The Woodalls had, and exercised, final control.* Therefore, an agency relationship was not created."

*Woodall, supra* at 430 (emphasis supplied).

Similarly, in *Spurlock v. Fayette Federal Sav. & Loan Ass'n* (1982), Ind.App., 436 N.E.2d 811, the lender-mortgagee disbursed the loan proceeds *only* at the request of the borrower-mortgagor. The mortgagor then paid the amounts directly to third party contractors. The mortgagors had contracted with a developer for

construction of a home after obtaining financing from Fayette Federal. The Spurlocks were then informed of a lien held by one of the contractors. They did not inform Fayette Federal of the lien and the Spurlocks executed an affidavit falsely stating that the property was not encumbered prior to the mortgage. When the contractor sought to foreclose its mechanic's lien, the Spurlocks cross-claimed against Fayette Federal alleging that it was liable for payment of the lien. Rejecting this argument, the trial court entered judgment for Fayette Federal. On appeal, this court affirmed and determined that:

> "Unlike *Prudential,* ... Fayette Federal never promised the Spurlocks it would act as their agent to obtain lien right waivers from materialmen....
>
> And perhaps most importantly, unlike in Prudential where the lender not only controlled the funds but also made direct disbursements of loan proceeds to third parties, Fayette Federal never disbursed loan proceeds to anyone other than the Spurlocks, and only upon their express request. Furthermore, Fayette Federal and the Spurlocks agreed to having the loan funds disbursed in three or four draws in accordance with the borrowers' needs. *Fayette Federal disbursed funds only as directed by the Spurlocks.*"

*Spurlock, supra* at 816 (emphasis supplied).

Unlike *Woodall* and *Spurlock,* mortgagee-AVCO maintained *complete control* of the funds disbursed to creditors. Its agreement with the Crums expressly provided that title insurance would be obtained, that the deed would be recorded, that legal services would be supplied and that the property would be titled in the Crums' names. The uncontroverted evidence at trial demonstrated that AVCO knew of the title and abstract problems before disbursement, *record* at 384, 483–84, even though, as AVCO conceded, clear and marketable title could not be conveyed to the Crums at closing. Catastrophe for the Crums.

Viewing the evidence in a light most favorable to AVCO, the Crums carried their burden of proof in demonstrating that the relationship between the parties was that of agent and principal, and that AVCO failed to exercise reasonable care in the performance of its duties, thereby proximately causing the damages sustained by the Crums. *See Prudential, supra.*

I would therefore reverse the trial court and order it to enter judgment in favor of the Crums.