BANK OF NEW YORK, Trustee,
Appellant–Plaintiff,

v.

Stephen H. NALLY; Hiram Nally; Eileen Nally; State of Indiana; Marina Limited Partnership, Appellees–Defendants.

Tod D. Owens and Pamela E. Owens,
Third–Party Plaintiffs,

v.

Stephen N. Nally, Bank of New York, Trustee, Shae Wiles, Michael Mize, Internal Revenue Service, et al., Third–Party Defendants.

No. 29A02–0312–CV–1085.

Court of Appeals of Indiana.

May 28, 2004.

Rehearing Denied Aug. 19, 2004.

Craig D. Doyle, Joanne B. Friedmeyer, James L. Shoemaker, Doyle & Friedmey-

er, Indianapolis, IN, Attorneys for Appellant.

Michael E. Farrer, Christopher D. Cody, Bingham, Farrer & Wilson, P.C., Elwood, IN, Attorneys for Appellees.

## OPINION

BAKER, Judge.

The circumstances of this case present an issue of first impression in Indiana: Is a mortgagee entitled to recover attorneys fees incurred when litigating the issue of mortgage priority?

Appellant-plaintiff Bank of New York, Trustee, (the Bank) appeals the trial court's award of attorney's fees to the third-party plaintiffs in this matter, Tod D. Owens and Pamela E. Owens (collectively, the Owenses). Specifically, the Bank argues that the Owenses were not entitled to such fees that were incurred in litigating the issue of priority of mortgages against the Bank because those fees were not incurred in the enforcement of the terms of a note and mortgage against the Defendants, Stephen H. Nally, Hiram Nally and Eileen Nally (collectively, the Nallys). Hence, the Bank asserts that the Owenses are only entitled to the amount of fees that were incurred in enforcing the terms of its mortgage against the Nallys because the language in the mortgage document and promissory note entitling them to attorneys fees is vague and does not expressly allow them to collect the fees incurred when litigating mortgage priority against third parties. Concluding that the trial court abused its discretion in awarding the Owenses the total amount of those fees, we affirm in part, reverse in part, and remand for a proper determination of attorneys fees that are due the Owenses, together with costs and interest.

*FACTS*

On December 16, 1996, the Nallys purchased certain real estate in Arcadia from the Owenses. As a part of the transaction, the Nallys executed a first mortgage on the real estate in favor of Amtrust Financial Services in the original amount of $204,000. Additionally, the Nallys gave a second mortgage on the real estate back to the Owenses in the amount of $22,490.91. The mortgage instrument executed between the Nallys and the Owenses provided that the "Mortgagor expressly agrees to pay the sum of money above secured and attorney's fees without relief from valuation laws." Appellee's App. p. 22. Additionally, the Nallys indicated in the installment promissory note that they agreed to pay the amounts due "until paid, with attorneys fees and costs of collection and without relief from valuation and appraisement laws." Appellee's App. p. 21.

The record shows that the Owenses' mortgage was recorded on December 26, 1996, in the Hamilton County Recorder's Office. On the other hand, the warranty deed transferring the real estate from the Owenses to the Nallys was not recorded until January 21, 1997. The Amtrust mortgage was also recorded that same day. As a result, the Owens mortgage was recorded before the Nallys acquired record title to the property.

Approximately two years later, the Nallys refinanced their purchase of the real estate and signed a mortgage in favor of EquiVantage, Inc. in the amount of $265,500. Of this amount, $202,323.04 of the funds from the EquiVantage mortgage was used to pay off the Amtrust Mortgage. EquiVantage had no knowledge of the Owenses' mortgage at the time it funded the transaction.

On November 19, 1999, the Bank acquired the EquiVantage mortgage through an assignment of deed of trust/mortgage.

At the time of this assignment, the Bank had no knowledge of the Owenses' mortgage. Eventually, the Nallys defaulted on the note that it had executed to the Owenses. Contemporaneously, the Nallys also apparently defaulted on the note to the Bank. On April 27, 2000, the Bank filed a complaint to foreclose on a mortgage not aware of—or naming—the Owenses because their mortgage was recorded before the deed for the real estate to the Nallys had been recorded. As a result of the default, the Owenses intervened in the Bank's action against the Nallys and filed their own complaint to foreclose and to determine priority of the mortgages. Thereafter, the Bank filed a motion for summary judgment, alleging that it was a bona fide lender who took without knowledge of the mortgage to the Owenses because it was not recorded in the chain of title. Thus, the Bank claimed it was entitled to judgment as a matter of law because it was entitled to priority under the theory of equitable subrogation. In response, the Owenses filed a motion for summary judgment of their own.

Following a hearing on the parties's respective motions, the trial court denied the Bank's motion and granted summary judgment for the Owenses. On appeal, a panel of this court affirmed, holding that the Bank was not a bona fide purchaser without notice of the other mortgage. That panel determined that the Bank was held to constructive notice of documents contained in both the grantor-grantee index and the mortgagor-mortgagee index. Thus, the Bank was not entitled to relief from the recording statute by the doctrine of equitable subrogation. *Bank of New York v. Nally*, 790 N.E.2d 1071, 1077 (Ind. Ct.App.2003).

After the resolution of the appeal,[1] the Owenses' counsel filed an affidavit in support of attorney fees with time records requesting the sum of $6880.56 as of October 11, 2002. The Owenses also claimed that since October 11, they incurred additional attorneys fees in the amount of $2200. Following the hearing that commenced on October 3, 2003, the trial court determined that a substantial portion of the attorney fees incurred by the Owenses were for the dispute concerning priority of the mortgage with the Bank. Thus, the trial court determined that the Owenses were entitled to attorney's fees in the amount of $9080.56 plus prejudgment interest in the sum of $8,305.59, costs and statutory interest until the amount is paid. The Bank now appeals from this order.

## DISCUSSION AND DECISION

### I. Standard of Review

When reviewing an award of attorney fees, we note that the trial court is empowered to exercise its sound discretion, and any successful challenge to its determination must demonstrate an abuse thereof. *Crum v. AVCO Fin. Serv.*, 552 N.E.2d 823, 831–32 (Ind.Ct.App.1990), *trans. denied.* An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. *Dempsey v. Carter*, 797 N.E.2d 268, 275 (Ind.Ct. App.2004), *trans. denied.* Generally, parties to litigation in Indiana pay their own attorney fees absent a statute or agreement authorizing an award of such fees. *Id.* at 275. A contractual provision agreeing to pay attorney fees is enforceable if the contract is not contrary to law or public policy. *Id.*

### II. The Bank's Contentions

In this case, the Bank argues that the trial court's award to the Owenses of

1. Our supreme court granted the Bank's petition for transfer in this case on May 21, 2004.

the entire amount of attorney fees they incurred in litigating this matter was an abuse of discretion. More specifically, the Bank contends that the Owenses are only entitled to their fees incurred enforcing the terms of their mortgage against the Nallys, inasmuch as the language set forth in the relevant documents does not expressly permit them to collect attorney fees incurred when litigating the issue of the mortgage priority against third parties. In a similar vein, the Bank urges that the trial court's award of attorney fees in this instance "sets a bad precedent in that it encourages needless litigation and may cause homeowners to lose any equity they may have in their homes." Appellant's Br. p. 4.

While we have found no published Indiana decision directly on point as to whether an award of attorneys fees against a mortgagor incurred by a mortgagee for litigating the issue of priority with another mortgagee is proper, this court has held that a mortgagee is not entitled to an award of all of its attorney fees incurred in an action simply because it involves a foreclosure of a note and mortgage that contain a provision for attorney fees. *Crum*, 552 N.E.2d at 831.

In *Crum*, the plaintiffs contracted to purchase some real property from an estate and arranged financing through AVCO. Thus, the Crums executed a note and mortgage in favor of AVCO. Thereafter, AVCO distributed the loan proceeds in accordance with the terms of the loan documents, even though the company was aware of an error in the legal description on the mortgage. The personal representative of the estate received a check from the loan proceeds that the Crums subsequently endorsed. However, the estate failed to deliver a deed to the Crums. As a result, the Crums sued AVCO, alleging that the company was negligent in han-

dling the mortgage transaction. AVCO also advanced a counterclaim on its note and sought to foreclose on the mortgage. In the end, the trial court granted summary judgment for AVCO on its counterclaim and foreclosed the mortgage.

The negligence action proceeded to trial where the court granted AVCO's motion for involuntary dismissal following the presentation of the Crums' evidence. AVCO sought an award of the entire amount of the attorney fees it had incurred during the litigation in the amount of $12,975. However, the trial court limited the amount of those fees to $3000, which represented the amount of fees directly related to the prosecution of its counterclaim. *Id.* at 831.

On appeal, we affirmed the judgment, noting that the mortgage "did not expressly provide for the payment of all attorneys fees incurred as a consequence of litigation involving the mortgagor and mortgagee." *Id.* at 832. Thus, we concluded that the trial court properly limited AVCO's award of attorney fees to those incurred in prosecuting its foreclosure action. *Id.*

Here, it is apparent that the language in the mortgage and promissory note documents authorizing the award of attorney fees to the Owenses does not specifically allow for fees that may be incurred when litigating with other parties such as the Bank. Just as compelling, the attorney fees provisions in the Owenses' note and mortgage do not identify with any specificity the attorney fees for which the Nallys are assuming liability. Had the Owenses desired to ensure that they received attorney fees for *all* litigation regarding their note and mortgage, they could—and should have—included specific language to that effect in the documents. Moreover, the Nallys had no control over this litigation, and Steven Nally never appeared in—and did not contest—the Owenses' foreclosure

action. The Owenses also did not name Jennifer Nally, the other signatory to the mortgage, in the foreclosure action, and never added her to that litigation.

While we note that other reported cases have permitted mortgagees to collect attorney fees for defending claims made against them by the mortgagors, the rationale set forth in those cases differs significantly from the circumstances here, because in those matters, the fees were incurred as a result of direct litigation with the mortgagors and not with third parties. Put another way, the mortgagors chose to defend themselves and participate in the litigation process. Conversely, the Nallys did not do so here.

By way of illustration, in *Motor Dispatch, Inc. v. Buggie*, 177 Ind.App. 347, 379 N.E.2d 543 (1978), a dispute arose between a corporation and Buggie, the company's former president. Buggie had agreed to sell his common stock in Motor Dispatch back to the corporation. As a part of the transaction, Motor Dispatch executed a note in favor of Buggie. Eventually, however, Motor Dispatch sued Buggie to collect on loans that it had allegedly made to Buggie. Buggie also filed a counter claim to collect on the note and sought attorney fees as provided therein. On appeal, we affirmed the trial court's attorney fee award for all of Buggie's fees, including those that he incurred in defending Motor Dispatch's claims. *Id.* at 546. In our holding, however, we noted that Motor Dispatch's claims against Buggie were "spurious" and "unsupported by convincing evidence." *Id.* Therefore, it follows that the award of attorney fees incurred by Buggie—as the holder of the note—who was compelled to defend against spurious claims made by Motor Dispatch as the maker of the note, was proper.

In our view, the rationale espoused in *Motor Dispatch* should not control the out-

come here. As noted above, the Owenses did not incur fees defending themselves against any set off claims made by the Nallys. To be sure, the Nallys never appeared in the action. Moreover, the Owenses incurred fees litigating with a third-party mortgagee and not the makers of their note and mortgage, and the matter involved a good faith dispute over the priority of the parties' respective mortgages. However, in *Motor Dispatch*, the maker of the note raised—and continued to litigate—set off claims against the holder of the note. Thus, it is apparent that Motor Dispatch was in control over the litigation, and the rationale espoused in that case does not dictate the outcome here.

For the above reasons, we conclude that the trial court erred when it awarded the Owenses the amount of fees they incurred in litigating the mortgage priority issue with the Bank. The Nallys never participated in the matter, and the language contained in the mortgage documents did not expressly authorize entitlement to such attorney fees. Thus, the trial court abused its discretion in awarding the amount of fees that the Owenses incurred in litigating the issue of priority against the Bank. As a result, we affirm in part, reverse in part, and remand this case to the trial court for a proper determination of attorney fees, along with costs and interest to which the Owenses are entitled.

Affirmed in part, reversed in part and remanded.

FRIEDLANDER, J., and BAILEY, J., concur.